Woodward v. Blanchard.

WILLIAM H. WOODWARD, Appellant, *v.* WILLIAM S. BLANCHARD, Appellee.

### APPEAL FROM MARSHALL.

Lands were stricken off and forfeited to the State for the non-payment of taxes; afterwards they were sold and conveyed by the auditor. The purchaser from the auditor took possession and made improvements, and he and his vendee con-

tinued in possession and paid taxes for seven consecutive years. *Held*, that the auditor's deed is good color of title, under the limitation act of 1839. *Held*, *also*, that the revenue act, declaring the lands forfeited for the non-payment of taxes, is not a penal provision, but only makes the State a purchaser at the tax sale.

Color of title is a question of law; but the good faith of a party claiming under it, is a question of fact, to be found and settled like other facts in the case.

The case of *Irving* v. *Brownell*, 11 Ill. R. 402, partially dissented from.

THIS is an action of ejectment brought by Blanchard against Woodward, to recover the possession of a lot of land of which Blanchard claimed to be seized in fee, described as lot number two hundred and eighty, on the town plat of the town of Henry, in Marshall county, Illinois, included in section sixteen, township thirteen north, of range two east of the fourth principal meridian. The declaration is in the usual form. Plea, the general issue.

The issue being joined at October term, 1854, of the Marshall Circuit Court, LELAND, Judge, presiding, by agreement of the parties, this cause was submitted to the court for trial, and a jury waived. The court found the defendant guilty, in manner and form as in plaintiff's declaration mentioned, and that the said William A. Blanchard, plaintiff, is seized thereof in fee simple, and adjudged that the said plaintiff have restitution of the said premises, in said plaintiff's declaration mentioned, from the said defendant, and that a writ of restitution issue therefor.

On the trial of this cause, the plaintiff, Blanchard, introduced as evidence a patent from John Reynolds, governor of the State of Illinois, to Albert Reeves, dated 13th day of August, 1834, which reads as follows:

"JOHN REYNOLDS, GOVERNOR OF THE STATE OF ILLINOIS,

*To all to whom these Presents shall come, Greeting :*

Whereas, it appears from a return made to the auditor of public accounts, by Nathaniel Chamberlain, school commissioner and agent of the inhabitants of Putnam county, that in pursuance of the acts of the General Assembly of the State of Illinois, entitled 'An act *authorizing the sale of sections numbered sixteen, or such lands as may be granted in lieu thereof to the inhabitants of such townships, for the use of schools*,' approved January 22nd, 1829, and the act amending the above recited act, approved ——— 15th, 1831, and the act approved March 1st, 1833, the said school commissioner did, on the 29th day of April, 1834, sell to Albert Reeves, of the county of Putnam and State of Illinois, a certain lot of land lying in the county aforesaid, being part of section numbered sixteen, granted by the United States *to the State of Illinois, for the use of the inhabitants of township number* thirteen north, range ten east of the fourth principal meridian, containing eighty feet by one hundred and sixty feet by survey, and that the said Albert Reeves has paid to the said school commissioner one dollar and ——— cents for the said lot of land, the price for which the same was sold.

Woodward v. Blanchard.

In consideration whereof, the State of Illinois doth hereby grant, bargain, sell and convey, unto the said Albert Reeves, the lot of land aforesaid, with the appurtenances thereof.

To have and to hold the same unto the said Albert Reeves, and to his heirs and assigns forever, in fee simple, as a sure, perfect and absolute estate.

In testimony whereof, I have caused these letters to be made patent, [ L. S. ] and the great seal of State to be hereunto affixed.

Given under my hand at Vandalia, this 13th day of August, 1834.

By the Governor, JOHN REYNOLDS.

(Countersigned,) A. P. FIELD, Secretary of State.

JAMES B. STAPP, Auditor P. A."

The defendant objected to said patent, as being insufficient evidence of title. The court overruled the objection, and the defendant excepted.

The plaintiff then read in evidence a deed from Albert Reeves and wife, dated September 22d, 1853, to him, the plaintiff, for the same land described in said patent, which was admitted without objection. The defendant admitted he was in possession of said lot at the time of the commencement of this suit.

The defendant then read in evidence a deed from the auditor of public accounts, dated on the 24th day of February, A. D. 1846, to Chester S. Woodward, which is in the usual form, and for the premises in question, duly recorded, etc. Plaintiff objected to the reading of this deed. Objection was overruled, and the plaintiff excepted. Defendant offered in evidence a deed from Chester S. Woodward to William Woodward, the defendant, dated June 20th, 1852, for the same land, which was read without objection. Defendant then offered the collector's receipts for the State, county, township and school tax for the years 1847, 1848, 1849, 1850, 1851, 1852, 1853, upon said lot, which were read without objection.

The defendant then introduced Archibald Spence, who testified that the premises in question have been under improvement since the year 1845; that the lot has been in possession of Charles S. Woodward, or William Woodward, from that time until the present; that William Woodward has resided on said lot for the last three or four years. This was all the evidence. The court adjudged in favor of the plaintiff.

The defendant below excepted to the decision and judgment of the court, and brought the case to this court.

B. C. COOK, for Appellant.

E. W. HAZARD, for Appellee.

SCATES, C. J. The defendant here recovered a judgment in ejectment, as plaintiff below, upon such proof of title as we

Woodward *v.* Blanchard.

deem sufficient, and we do not examine any of the objections urged against it.

The only question we propose to examine, is the title of the plaintiff in error, as set up and insisted upon in the court below in his defense. We are of opinion that the court below, to which the facts were submitted, erred in finding the issue for the defendant, and also in the rendition of judgment upon that finding.

The defense set up, was the statute of seven years' limitation, perfecting title under a deed from the auditor of public accounts.

The lot in question had been assessed for taxes, for the years 1839 and 1841, offered for sale for non-payment of these taxes, and for want of bidders, had been stricken off to the State as forfeited. In pursuance of the act of March 3, 1845, this lot, with like forfeited lots and lands, was exposed to sale on first September, 1845, for the taxes due on it, and bid off by plaintiff's vender, Chester S. Woodward, on February 26, 1846 ; the auditor executed to him a deed, and he conveyed to plaintiff, January 20, 1852. C. S. Woodward took possession of the lot, in the fall of 1845, rented it to a witness in this case, who plowed it up that fall, and fenced, cultivated and paid rent for it, to C. S. Woodward, in 1846. It so remained in the possession of C. S. Woodward or his tenants, until he sold to plaintiff, who took possession, and had resided upon it for the three years last preceding the trial below. He also proved the payment of the taxes for 1847 to 1853, both inclusive. Upon these facts, the plaintiff claims, that he was protected by, and insisted upon the benefit of, the statute of seven years' limitation.

There are two statutes of this State, fixing a period of seven years' limitation, for the purpose of quieting and perfecting defective titles.

An examination of the first, passed January 17, 1835, and incorporated into the Rev. Stat., 1845, chap. LXVI, pp. 349, 350, sects. 8 to 11, inclusive, entitled "Limitations," will aid us in elucidating the true spirit and meaning of the second act, approved March 2, 1839, and incorporated in the revision, chap. XXIV, pp. 104, 105, sects. 8 to 10, inclusive, entitled "Conveyances."

The first act, sects. 8 and 11, barred every "real, possessory, ancestral or mixed action, or writ of right." And all "rights of entry into any lands, tenements or hereditaments, of which any person may be possessed, by *actual residence* thereon, having a *connected title* in *law* or *equity*, *deducible* of *record* from the United States, or from any public officer, or other person authorized by the laws of this State, to sell such lands for the non-

payment of taxes, or from any sheriff, marshall or other person authorized to sell such land on execution, or under any order, judgment or decree of any court of record," unless brought or made " within seven years next after *possession* being taken, as aforesaid," if such resident possessor had such title at the time of taking possession; if not, then within seven years from the acquisition of such title, with the possession.

The provisions of this act were added to our existing statute of twenty years' limitation of the same actions, and rights of entry, substantially the same as 21 Jas. I, cap. XVI.

The substantial difference between this reduced period of seven years, and the existing twenty, was in restricting it to connected titles in law or equity, deducible of record from specified sources, and in support of a *possession* by *actual residence* for seven years next preceding suit or entry, (sec. 9.) When such a possession had been continued for that length of time, under such a title, the party might insist upon and protect himself by the bar of the statute, and was not driven to show seizin or adverse possession for twenty years, with or without color of title. Neither of these statutes provided for the exigencies of settlers, in quieting possession and protecting titles, either from patentees, or under tax or execution sales. Some could not show a connected title, others could not deduce of record, and many had paper titles, but were not possessed by actual residence. Wanting either element, the party was unable to use the statute as a shield over his possession or his title, but was left exposed for twenty years to litigation and the loss, not only of his possession and title, but of all his labor and improvements. This state of things greatly retarded the settlement, improvement and development of the agricultural interests of the State, and more particularly, in the district for military bounty lands. Viewing thus the provisions of the existing laws, and the evil, we may more readily comprehend the true spirit of the proposed remedy in the act of 1839.

By that act, " every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who shall, for seven successive years, continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title." This time is transmissible with the land, to a purchaser, devisee or heir. But the 9th section declares, that color of title, made in good faith, with the payment of taxes for the same length of time, will, in like manner, ripen into a legal ownership to vacant and unoccupied lands, unless the person having the better paper

title, shall defeat it by the payment of the taxes, for one or more years of the seven, or by refunding all the taxes, with interest, at the rate of twelve per cent. per annum, to the person who has paid them to the State.

Where there is an adverse title, and the owner is under twenty-one, insane, imprisoned, under coverture, or out of the United States, and in their employment, or that of this State, the time is extended to three years after the removal of the disability, for the commencement of suit, or the payment of the taxes, as before provided. There is in this act, not only a change in the facts, but an evident intention to dispense with part of the requirements of the former act, and relax the strictness required in others. Possession is retained in one case, but residence is dispensed with; connection in the chain, to be deduced of record, and its deduction from specified sources, are dispensed with,—in place of them, claim and color of title, made in good faith, with the payment of taxes, are substituted, as to lands in possession. But as to another class of lands, vacant and unoccupied, possession and claim are both dispensed with, and the party is only required to show color of title, in good faith, with the payment of taxes. Now, the statute has explained both these titles to be paper titles, by declaring that lands shall be included under them, " to the *extent* and according to the *purport* of his or her paper title," and by allowing those who may have " a better paper title to said vacant and unoccupied land," to defeat the bar by limitation, by paying the taxes for one or more years of the seven, and within that period.

We find thus, in this statute, a very material change made in the existing provisions of the law, in relation to the evidences of paramount title, and the acts and facts necessary to constitute and show it. Former statutes of limitation gave the possessor a shield to protect himself against actions at law, and rights of entry. This statute, if literally understood, gives him a sword; for it declares that he " shall be (held or deemed and) adjudged to be the *legal owner*."

We are not able to distinguish the facts in the record, establishing plaintiff's title in this case, from the facts required by the statute, to constitute ownership. And this might be true, as a result under the statute, even though the revenue law, under which the lands were declared forfeited to the State, for the non-payment of the taxes, was unconstitutional and void, as a penal provision to effect such a divestiture of private property. We do not deem it essential, in the discussion and decision of this case, to inquire into the meaning of forfeiture, as used in the revenue law, under which the State claimed title,

nor into the constitutionality of such provisions. Most acts of limitation, if not all, in relation to entries upon, and suit for possession or title to lands, are based and proceed upon the implied assumption that the possession and title commenced in wrong, and are defective and insufficient to establish title of themselves, without the aid of the statute to sustain them. And in this view of such statutes, it has been held, that the vendee, under a fraudulent deed, might insist upon the statute, if he were not implicated in the fraud.

We are, therefore, under this defense, not driven to the springs or sources of title, to inquire if they be genuine and pure, nor to the successive channels through which it may pass, for the purpose of removing obstructions to or defects in its course, current and transmission. But we come at once to the party defendant, to inquire if he had a claim and color of title with his possession at the beginning of this period, if they were made in good faith, and his possession has been continued and accompanied by the payment of taxes for seven successive years. What is claimed? The act of taking possession, if otherwise unexplained, will be referable to the paper title, and understood as making claim under it. Color of title may be made through conveyances, or bonds and contracts, or bare possession, under parol agreements. Nor is it at all important whether the title be weak or strong, under general statutes. For color of title is acquired to establish an adverse possession for the operation of the statute, which commenced by the disseizin of the rightful owners, with a claim of the land.

But our statute requires this color of title to be accompanied by a written evidence, a "paper title," and an act or motion of the mind. It must be in good faith, honestly. Defects in the title may not be urged against it, as destroying "color;" but at the same time might have an important and legitimate influence in showing a want of confidence and good faith, in the mind of the vendee, if they were known to him, and he believed the title therefor to be fraudulent or void. What is color of title is matter of law, and when the facts exhibiting the title are shown, the court will determine whether they amount to color of title. But the good faith of the party in claiming under such color, is purely a question of fact, to be found and settled as other facts in the case.

We can entertain no doubt in this case, that the auditor's deed to the purchaser, at the tax sale, is color of title in Woodward, in the true intent and meaning of this statute, and without regard to its intrinsic worth as a title, and without regard to the constitutionality of the laws under which it was derived. We have as little reason to doubt the sincerity, honesty of pur-

pose, and good faith of Woodward, in believing it to be a good title, and taking the possession, and paying the taxes under it, relying upon it for his title.

We are aware that these views do not, nor are we able to accord fully with all the reasoning of this court in *Irving* v. *Brownell*, 11 Ill. 412, 413, in the construction of the act in relation to claim and color of title.    We had long had the protection of a statute of limitation of twenty years, which protected all who had possession claiming adversely, all who had possession under color of title, and this color of title was derivable by deed or contract with a trespasser or disseizor in possession, and all who had only a *prima facie*, or other defective title, with possession.    In construing this old statute, in England, and in the United States, the courts had settled judicially, what would be adverse possession, and what was claim and color of title.    These expressions had a pretty clear, definite and fixed meaning in law.    To provide for cases and circumstances not adequately protected by a limitation of twenty years, the legislature reduced the period to seven years, but confined it to special cases ; to those who actually resided on the land under a connected title, deducible of record from the United States, or this State direct, or under sales for taxes, or on judgments, decrees, orders, or executions.    This act would exclude a great number of persons embraced by the former act, having adverse possession, and having various grades of defective titles, and color of title ; some not having actual residence, and others not having connected titles, traceable by record to the specified sources.    Under these circumstances, the act of 1839 was passed, enlarging the scope of the act of 1835, or the seven year limitation, to all who might have actual possession without residence ; all who might have claim and color of title, made in good faith, although it might not be connected or deducible of record from the particular sources, upon their adding to these old grounds of bar, the payment of taxes for the time, and showing the color of title by writing.    It affords no evidence, to my mind, that the legislature intended to change the meaning of color of title, as settled under the limitation of twenty years, to a higher grade, or *prima facie* title, but rather to extend the protection of the shorter period over another large class of the cases left alone to the protection of the longer period.    I am not able, therefore, to draw from the language of the act, nor from the circumstances under which it was passed, any inference or conclusion that " claim and color of title " were used, or intended to be used, in any other sense than that known, used and settled under the existing acts of limitation.    If this reasoning and its conclusion be correct, the same kind of claim and

color, if in paper title, supported and accompanied by *actual* possession and the payment. of all taxes legally assessed, for seven years, strengthened by good faith or honest belief of the party that he had title, or in such title as he has, will protect the party in the seven, as they would under the twenty years, without these additional facts. Such, we think, was the character of title, or color intended, and fixed by the act as matter of law. The state of mind of the party in relation to such title, was an existing truth, which must be ascertained and found as a fact in the cause. Many independent facts and surrounding circumstances may be admissible in evidence, and legitimately considered as establishing or impeaching the state of mind in its good faith, honest belief or trust in, or dependence upon such title.

Among the rest, we may inquire into the general intelligence or ignorance of the party, and particularly in relation to the principles of law on questions of title, and into such defects and facts as were brought to his knowledge, and thus form some sort of judgment or conclusion as to how they should and *did* affect the mind of the claimant, and influence his motives. I see but one difference between this and another class of cases, in the principles that govern the inquiry into the intent, motive, state, or good faith of the party. The *policy* of the law will not receive actual ignorance of it, as an excuse or defense in doing *acts* denounced by it as criminal, but will impute a knowledge of it to every man, and hold him accountable accordingly. And this is a policy that cannot be altered by actual ignorance in fact, although every one who hears the facts may be compelled to believe the party ignorant. And the party is as definitely concluded from denying the intents and motives resulting from this imputed knowledge, as he is in denying the fact of knowledge. These principles do not apply universally, nor in their inflexible strictness, to questions of property or title. An artificial system of constructive notice has been introduced by positive statutes, in relation to recording title deeds. But this is made to operate upon the naked fact, without regard to intention or motive of the party charged with the consequences resulting. So a retention of the possession of a thing sold, has, by some decisions, been deemed conclusive evidence of fraud, under the statute of frauds. If " good faith " is to be tested by a *prima facie* title, in order to make " claim and color," we apprehend the uncertainty might be as great, and the rule almost as variant and changeable as the man, or the mind and capacities called to apply it. " Good faith " is doubtless used here in its popular sense, as the actual, existing state of the mind; whether so from ignorance, scepticism, sophistry, delusion, fanaticism, or

imbecility, and without regard to what it should be from given legal standards of law or reason. So I understand the current of decisions upon these and similar questions of acts, under statutes of limitations.

To sustain these views, a reference to some of the decisions may not only be profitable but satisfactory ; for it is ever desirable, not only that statutes should be construed in their true spirit and meaning, but that the construction should be acquiesced in by, and satisfactory to, those to be affected by it.

Before the English statute of limitations, it was held in *Radford* v. *Harbyn*, 2 Cro. Jac. 122, that a plea of justification in trespass for taking goods was bad, because it showed that the plaintiff claimed them by color of a deed of gift from a third person, which was good color. So, in trover, a special plea was bad which showed that the vendor retained possession after sale, and resold them to plaintiff, and delivered possession. *Austin* v. *Austin*, 2 Cro. Jac. 319.

A grant from the State was held to be color of title, and color and claim under it is adverse, and a possession under such a title for seven years, would be good under the statute of limitation. *Moody* v. *Fleming*, 4 Ga. R. 118. This is equally true whether the grant be voidable or void ; ibid. 118, 120. The bar of the statute is acknowledged to originate in wrong, (*Bradstreet* v. *Huntington*, 5 Pet. U. S. R. 446,) and so a deed void for the fraud of the vendor, may still give color of title to an adverse possession in a vendee not implicated in the fraud, to support and protect him under the statute of limitations. *Gregg* v. *Lessee of Sayre, and wife*, 8 Pet. R. 253. And this principle is again repeated by the Supreme Court in *Lessee of Ewing* v. *Burnett*, 11 Pet. R. 53, 54, that color of title may be derived from a void deed. Angell on Limitations, 435. It is carried, if possible, further in Massachusetts, where a parol gift of land is held to be sufficient title to support an adverse possession. *Sumner* v. *Stevens*, 6 Met. R. 337 ; 2 Met. R. 32. The principle, as laid down in 8 and 11 Peters, seems to be sustained in *Denexden, Saxton et al.* v. *Hunt*, 1 Spencer R. 493. Although the grantee may be under a mistake in supposing his grantor had title, yet such conveyance may confer good color of title upon him. *Bogardus* v. *Trinity Church*, 4 Paige R. 200. The doctrine laid down by the courts in New York is quite as broad as in the cases above, in relation to void and defective titles being sufficient color to support an adverse possession. And the rule in relation to notice sufficient to put a party upon inquiry, does not apply to purchasers who claim under the statute of limitations. *Clapp* v. *Bromaghan*, 9 Cowen R. 558. An executory agreement will support possession as adverse, and may give color.

28

Ibid. 556. See *Jackson* v. *Todd*, 2 Caine's R. 183; *Jackson* v. *Harder*, 4 John. R. 208.

The same doctrine, in relation to color, or the character of a title necessary to show adverse possession, and to protect a possession under the statute of limitations, is recognized and adopted in Kentucky. *Riggs, etc.*, v. *Dooley, etc.*, 7 B. Monroe, 238, 239; *Taylor* v. *Bucknor*, 2 A. K. Marsh. R. 19; *Roberts et al.* v. *Sanders*, 3 ibid. 29.

The same general principles and distinctions are recognized in Pennsylvania. *Overfield* v. *Christie et al.*, 7 Serj. and Raw. 174; *Mc Call* v. *Neely*, 3 Watt's R. 70; *Lawrence* v. *Hunter*, 9 Watt's R. 73; *Watson* v. *Gregg*, 10 Watt's R. 295; *Ash* v. *Ashton*, 3 Watt's and Serj. R. 513; *Patterson* v. *Reigle*, 4 Penn. State R. 204; *Waggoner* v. *Hastings*, 5 Penn. State R. 302; *Dikeman* v. *Parish*, 6 Penn. State R. 219; *Fitch* v. *Marsh*, 8 Penn. State R. 507.

Many additional authorities might be added in support of the same principles. Many of the decisions have been upon claim and color of title made under statutes of limitation, reducing the periods to two, five and ten years, etc., and under which, claim and color of title have been discussed and treated as the same, that it was under the statutes of twenty years. I have met no authority that would require a different construction. General principles would not only justify, but require, us to say that the legislature intended to, and did, use the terms in their common, legal and fixed sense, as settled by decisions.

So in relation to the rule of construction, in reference to the " good faith " or intention of the party; the same remarks will apply, and the authorities in part above referred to, will sustain the rule here laid down. I have not time, under present circumstances, to make particular references on this branch of the subject.

We would be understood, in referring to the eighth section, as construing it as a shield of protection, as set up in this case. The ninth section has been referred to for illustration, and not for its construction.

The claim and color of title by the auditor's deed, we hold to be sufficient under our statute; and there is nothing in the record impeaching the good faith in which this title was claimed by the plaintiff and his grantor. He is therefore entitled to defend his possession against the entry and action of defendant, having continued the same for seven consecutive years, with the payment of taxes.

Judgment reversed and cause remanded for a new trial.

*Judgment reversed.*

CATON J., DISSENTING. I am not prepared to depart from the rule laid down by this court, in the case of *Irving.* v. *Brownell*, 11 Ill. I concurred in that decision from a conviction of its correctness, and I cannot now say, that the rule there laid down for the resolving of the question of the *bona fides* of the party claiming to defend his possession, is erroneous. There is some degree of certainty and reliability under that rule. By the other, everything is set afloat, and juries will be called upon to try the intellectual capacities and legal attainments of parties.

He who purchases of a party who has been in possession for five of the seven years, must not only examine the title which he is purchasing, and be convinced of its genuineness, but he must inquire into the intelligence and legal learning of his grantor, and determine, at his peril, whether he, too, believed the title to be good ; and if, upon a trial of title, he should appear to have been mistaken, and it should also appear that his grantor was not as credulous as himself, he will lose the benefit of the adverse possession of his grantor ; for I take it, that the possession held in bad faith, would not enure to the benefit of the *bona fide* grantee.

It is true that this difficulty must always exist, to some extent, under this statute, but it will be much less embarrassing, under the rule first laid down, than under one more lax. I must hesitate to concur on this point.