JAMES W. CONVERSE

*v.*

THE CALUMET RIVER RAILWAY COMPANY.

*Opinion filed February 21, 1902.*

1. COLOR OF TITLE—*color of title, under section 6 of Limitation act, must be a paper title.* The color of title-required by section 6 of the Limitation act must be a paper title purporting, on its face, to convey title, and cannot exist, in whole or in part, in parol.

2. SAME—*condemnation judgment not color of title.* A condemnation judgment authorizing a railway company, upon payment of the damages awarded, "to enter upon" the land "and use the same as and for the uses and purposes of its railroad as provided by law," is not, though followed by payment of damages and entry upon the land, color of title within section 6 of the Limitation act.

3. What effect a condemnation judgment, followed by an order of possession made after payment of the compensation and damages awarded, would have as respects the color of title contemplated by section 6 of the Limitation act is not determined, the question not being involved in this case.

APPEAL from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

OLIVER & MECARTNEY, for appellant:

The condemnation proceedings did not give "color of title" within the meaning of section 6 of the Limitation law, and the judgment is not a "paper title" which, on its face, purports to convey title; therefore the judgment was erroneous. *Bride* v. *Watt*, 23 Ill. 458; *Rigor* v. *Frye*, 62 id. 508; *Hardin* v. *Crate*, 78 id. 537; *Rawlings* v. *Bailey*, 15 id. 180; *Lightcap* v. *Bradley*, 186 id. 518; *Smith* v. *Railway Co.* 67 id. 192; *Chickering* v. *Failes*, 26 id. 520.

Under condemnation proceedings a railroad gets simply an easement, the fee remaining in the owner. Section 6 of the Limitation law does not apply to easements. Const. art. 2, sec. 13.

LOESCH BROS. & HOWELL, for appellee:

The condemnation judgment, followed by payment, is color of title within the meaning of section 6 of chap-

ter 83 of the Revised Statutes of 1874. Rev. Stat. chap. 47, secs. 10, 14; *Chickering* v. *Failes,* 26 Ill. 508; *Hassett* v. *Ridgely,* 49 id. 197; *Wright* v. *Stice,* 173 id. 571; *Baldwin* v. *Ratcliff,* 125 id. 376; *McConnell* v. *McConnell,* 64 N. C. 342; *Woodward* v. *Blanchard,* 16 Ill. 424; *Dickenson* v. *Breeden,* 30 id. 279; *Griffin* v. *Marine Co.* 52 id. 145; *Hinkley* v. *Greene,* id. 223; *Rawson* v. *Fox,* 65 id. 200; *Railroad Co.* v. *Nugent,* 152 id. 119; *Railroad Co.* v. *Chicago,* 149 id. 461; *Packard* v. *Johnson,* 4 Pac. Rep. 633; *Salter* v. *Salter,* 82 Ga. 178; *Railroad Co.* v. *Cogsbill,* 85 Ala. 456; *Railway Co.* v. *Teters,* 68 Ill. 144; *Keener* v. *Railway Co.* 31 Fed. Rep. 126; *Railroad Co.* v. *Hildebrand,* 136 Ill. 467; *Railroad Co.* v. *Railroad Co.* 66 id. 174; *Chicago* v. *Barbian,* 80 id. 482; *Schreiber* v. *Railroad Co.* 115 id. 340; *Railroad Co.* v. *Gates,* 120 id. 86; *Railway Co.* v. *Brown,* 136 id. 322.

Mr. Justice Hand delivered the opinion of the court:

This is a suit in ejectment brought by the appellant against the appellee in the circuit court of Cook county to recover lots 13, 14 and 15, in block 26, in Russell's subdivision (east of the river) of the south half of section 18, township 37, north, range 15, east of the third principal meridian, in Cook county, Illinois. A jury having been waived and the cause coming on for trial before the court, appellant, to establish title in him to the real estate in question, offered in evidence (1) a written stipulation between the parties that on December 23, 1868, William Davies was the owner in fee simple of said real estate; (2) a stipulation between the parties that on February 11, 1869, William Davies, being the owner of said real estate in fee simple, conveyed it by warranty deed to Robert B. Parker, which deed was recorded in the recorder's office of Cook county on September 8, 1869; (3) a quit-claim deed dated August 16, 1887, from Robert B. Parker and wife to appellant, conveying said real estate. Appellee, to establish title in it, offered in evidence (1) a stipulation between the parties showing the destruc-

tion by fire of all public records of deeds in Cook county made prior to October 9, 1871; that on February 1, 1887, Handy & Co. had charge and control of the only ante-fire abstracts in said county; that on the last named date appellee requested Handy & Co. to furnish the names of all owners or persons interested in said real estate, for the purpose of making such owners and interested persons parties to a condemnation proceeding; that said abstracters furnished what purported to be a complete list of such persons, and that the persons whose names were thus furnished were made parties defendant in a condemnation suit commenced on March 29, 1887, against said real estate; that the list so furnished did not contain the name of Robert B. Parker, and he was not made a party to the condemnation suit; (2) the record of said condemnation suit, including the verdict and judgment, which judgment, after directing the petitioner "to pay to the county treasurer, for the benefit of the owners and parties interested, or to the owners and parties interested, the sum of $35 per lot," provided "that upon said payments being made, said petitioner, the Calumet River Railway Company, shall enter upon said lots * * * as in said petition and hereinbefore described, and the use of the same as and for the uses and purposes of its railroad, as provided by law;" (3) a stipulation between the parties that on the 29th day of July, 1887, appellee paid to the county treasurer of Cook county, for the benefit of the owners of said real estate, the sum of $35 per lot, in accordance with said judgment; that no part of said money has ever been received, either by appellant or the said Parker; that immediately after said payment appellee took actual possession of said real estate, built its railroad thereon, and has ever since been in actual possession of the same as and for railroad purposes, operating its railroad thereon, claiming under said condemnation judgment, and has paid all taxes assessed on said lands for the years 1887 to 1897, both inclusive.

At the conclusion of the evidence appellant presented a written finding in favor of appellant, but the court refused to so find.   The appellant then presented the following propositions of law, which were marked "refused" by the court:

1. "The court holds that the condemnation judgment herein did not constitute color of title within the meaning of section 6, chapter 83, of the Illinois statutes.

2. "The court holds that the condemnation judgment herein did not give to the defendant a paper title to the real estate in question, within the meaning of section 6, chapter 83, of the Illinois statutes.

3. "The court holds that the possession by the defendant for its right of way does not constitute actual residence on said land, within the meaning of section 4, chapter 83, of the Illinois statutes."

The court having found defendant not guilty, and having entered judgment against appellant for costs, an appeal has been prosecuted to this court.

The sole question presented in this case for decision is whether or not the condemnation judgment offered in evidence, followed by payment, is color of title within the meaning of section 6 of the Statute of Limitations. (Hurd's Stat. 1899, chap. 83, sec. 6, p. 1118.)   Leaving out all elements not in dispute, said section reads as follows: "Every person in the actual possession of lands or tenements, under claim and color of title,   *   *   *   shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title."   Under this section of the statute the color of title required must be a "paper title," and cannot exist, in whole or in part, in parol.   (*Woodward* v. *Blanchard*, 16 Ill. 424; *McClellan* v. *Kellogg*, 17 id. 498; *Bride* v. *Watt*, 23 id. 507; *Shackleford* v. *Bailey*, 35 id. 387; *Huls* v. *Buntin*, 47 id. 396; *Morrison* v. *Norman*, id. 477; *Rigor* v. *Frye*, 62 id. 507; *Sontag* v. *Bigelow*, 142 id. 143; *Tate* v. *Southard*, 3 Hawks, 119; 14 Am. Dec. 578; *Wright* v. *Mattison*, 18

How. 50.)   And such "paper title" must purport upon its face to convey or transfer title.   *Rawlings* v. *Bailey*, 15 Ill. 178; *Dickenson* v. *Breeden*, 30 id. 279; *Hardin* v. *Crate*, 78 id. 533; *Kruse* v. *Wilson*, 79 id. 233; *Coleman* v. *Billings*, 89 id. 183; *Bolden* v. *Sherman*, 110 id. 418; *Lightcap* v. *Bradley*, 186 id. 510; *Perry* v. *Burton*, 111 id. 138.

In *Rawlings* v. *Bailey*, *supra*, it was held that a guardian's deed is inoperative until approved by the court, and that such a deed is not "color of title."   The court say: "By the words 'claim and color of title made in good faith,' must * * * be understood such a title as, tested by itself, would appear to be good. * * * The guardian's deed did not constitute a *prima facie* title, as * * * something else must be shown to exist in connection with it in order to pass the title."

In *Bride* v. *Watt*, *supra*, it was held that a tax certificate, under which the holder afterwards procured a deed, was not color of title.   The court, in giving a construction to the statute in question and in defining "color of title," said: "We are, however, aided, to a limited extent, in ascertaining that intention, from the latter portion of the enacting clause of the section itself, which, by its terms, confines it to paper title.   That clause excludes all verbal agreements and equitable titles not supported by paper or written title. * * * Had the act declared that the holder of color of title, paying taxes as required by this law, should be adjudged to be the holder of the legal title to the extent and according to the purport of his color of title, agreement for a title or claim of title, then the act might be construed to embrace every kind of title or claim which has been held to be color under the twenty years' limitation laws; but that construction is excluded by the terms of the act itself."   After saying that the tax certificate does not purport to pass any title, the court say: "To confine such a title according to its purport would only be to make the instrument valid by curing defects which it

might contain.   *   *   *   Stephens, in his treatise on Pleadings, defines it [color of title] to mean an apparent or *prima facie* right.   *   *   *   The legislature having excluded the broadest and most comprehensive sense of the term, must have intended to use it in the sense in which it is defined by these authorities when they confine it to paper or written color of title. If so, the instrument relied upon as color must purport on its face to convey title.   *   *   *   Not that the title should purport, when traced back to its source, to be an apparently legal and valid title, but the instrument under which the occupant holds and upon which he relies must itself profess to convey a title to the grantee."

In *Dickenson* v. *Breeden, supra,* on page 325 it is said: "What is color of title made in good faith, under that section? For an answer to this question we have only to look to the decisions of this court. In *Woodward* v. *Blanchard,* 16 Ill. 424, it was said that color of title was a question of law and good faith a question of fact, and that color of title must be a paper title, and whether originating in a wrong or a right made no difference. There must be some written evidence of title under the statute, and, as the court say, 'an act or motion of the mind.' It must be acquired honestly. It must be such a title as a reasonably intelligent man would have confidence in. Acquiring such a title would be color of title made in good faith. In *Irving* v. *Brownell,* 11 Ill. 402, this court said: 'By the words 'claim and color of title made in good faith,' we must understand such a title as, tested by itself, would appear to be good,—that is, a *prima facie* title.' We understand by this, that any sort of title a reasonable man would pay money for, and pay the yearly taxes assessed upon it for a series of years, is color of title made in good faith. In more recent cases this subject has been discussed by this court, and in *Dunlap* v. *Daugherty,* 20 Ill. 398, we said that an executory contract for a conveyance was not color of title. In *Bride* v. *Watt,*

195—14

23 Ill. 507, we held that a certificate of purchase at a tax sale was not color,—that such certificate does not purport to pass any title, either in fee or any other estate. An instrument of writing, to be effectual as color, must purport on its face to convey title. It must, apparently, transfer title to the holder. Not that the title, when traced back to its source, should prove to be an apparently legal and valid title, but the instrument under which the claimant holds and upon which he relies must itself profess to convey a title to the grantor. In *Holloway* v. *Clark*, 27 Ill. 483, it was held that the clerk's or sheriff's deed for land sold for taxes was color of title; and so of a quit-claim deed, for they, each of them, purported to convey the title, and it was not necessary, if the deed was regular on its face, to show that the requirements of the statute had been observed in making the sale. The substance of these decisions is, that any deed purporting on its face to convey title, no matter on what it may be founded, is color of title. So this court said in the case of *Watts* v. *Parker*, 27 Ill. 224, that a party claiming color of title might avail, in deraigning his title, of a deed wanting a seal. (See, also, *Dawley* v. *VanCourt*, 21 Ill. 459.) The object of the ninth section evidently is, to render effective, under certain circumstances, invalid titles, for as to valid titles this section would be of little practical use. The current of the decisions of this court is, that color of title made in good faith is shown by any deed or instrument in writing which purports on its face to convey title which a party is willing to, and does, pay his money for, apart from any fraud, and pays all the public taxes assessed upon the land so conveyed. The deed itself purports good faith, unless facts and circumstances attending its execution show that the party accepting the deed had no faith or confidence in it."

In *Rigor* v. *Frye, supra,* it was held that a bond for a deed did not constitute color of title. The court say (p. 509): "It was, at most, an executory agreement, enti-

tling the appellant, at a future day, to a deed that would convey the title in case he should comply with certain conditions. It did not constitute 'paper title,' in the sense in which those words are used in the statute." So in *Hardin* v. *Crate, supra*, it was held that a contract for a deed was not color of title.

In *Lightcap* v. *Bradley, supra*, it was claimed that the decree of sale in a foreclosure case and certificate of purchase constituted "color of title," which, coupled with possession and payment of taxes, made the holder the owner of the land to the extent and according to the purport of her "paper title." The court said (p. 529): "The certificate of purchase only entitles him to receive the legal title at a future time upon a certain condition. * * * The certificate of purchase did not, at any time, purport to convey title or give defendant any right to the possession, and could not be made a basis of title under section 6 of the Limitation act."

In *Tate* v. *Southard, supra*, the Supreme Court of North Carolina held an attachment, execution and sale did not constitute color of title within the meaning of the Limitation act of that State, for the reason that, the purchase being proved by parol only, one of the essentials of color of title was lacking; and the Supreme Court of Georgia, in *Baird* v. *Evans*, 58 Ga. 350, held a sale under execution will not be color of title unless a deed is executed.

In *Sontag* v. *Bigelow, supra*, it was held a parol partition of land, although followed by exclusive possession in accordance with the terms of the agreement of partition, does not constitute color of title under the seven years' limitation law. In *Woodward* v. *Blanchard, supra*, where lands had been forfeited to the State for non-payment of taxes and afterwards sold and conveyed by the Auditor, it was held that the Auditor's deed was good color of title. In *Hassett* v. *Ridgely*, 49 Ill. 197, which was re-affirmed in *Wright* v. *Stice*, 173 Ill. 571, it was held that a decree in partition vesting the title in the respective

owners was color of title. In *Chickering* v. *Failes*, 26 Ill. 507, it was held that a proceeding to foreclose a mortgage by *scire facias* was color of title. In *Baldwin* v. *Ratcliff*, 125 Ill. 376, it was held that a will under which the title to real estate passed to the devisees therein named was color of title.

In the foregoing cases it will be observed the instrument, judgment, decree or proceeding, if held to be color of title, in each instance purported upon its face to convey or transfer title, and no case has been cited, and we believe no case can be found, wherein it has been held that parol evidence may be introduced in connection with the paper title relied upon to establish color of title.

Section 10 of the Eminent Domain act (Hurd's Stat. 1899, chap. 47, p. 839,) provides that the judge or court shall, upon the return of the verdict of the jury, make such order as to right and justice shall pertain, ordering that petitioner enter upon the property and the use of the same upon payment of full compensation as ascertained by the jury, which order, with evidence of such payment, shall constitute complete justification in the taking of such property. It is clear from this language that the judgment rendered upon the verdict of the jury, or upon a finding by the court where a jury is waived, does not purport upon its face to transfer or convey the title to the property sought to be condemned, to the petitioner, but that such judgment merely fixes the amount of damages caused by the improvement, or the amount of compensation to be paid to the owner for the taking of his property, and of itself does not purport to pass the title of the property sought to be condemned, to the petitioner seeking to condemn it. It is only a conditional judgment. Its completeness, as working a condemnation of the land and the passing of the title thereto to the petitioner, depends upon the future payment of the award by the petitioner. The latter is under no legal obligations to pay any money unless it chooses to do so, and

even after appeal and affirmance it has the right to refuse to pay the award, may abandon the improvement and decline to take the property if it sees fit. As to the amount of compensation and damages such judgment is final, but it is not final as to the question of the payment of such compensation and damages or the right to compensation of the property condemned. (*City of Chicago* v. *Hayward*, 176 Ill. 130; *St. Louis and Southeastern Railway Co.* v. *Teters*, 68 id. 144; *Chicago and Northwestern Railway Co.* v. *City of Chicago*, 148 id. 141; *Chicago and Western Indiana Railroad Co.* v. *Guthrie*, 192 id. 579.) In *City of Chicago* v. *Hayward, supra*, on page 134 we say: "A judgment in a condemnation proceeding finding the compensation to be awarded to the land or lot owner gives the corporation condemning, the right to the land on condition that it first pays for the same. The verdict and judgment only settle the value of the real estate which the party condemning seeks to appropriate. Under such condemnation proceedings the city is under no legal obligation to pay any money whatever, unless it chooses to do so. The proceeding merely fixes the amount to be paid before the property can be lawfully taken.   *   *   *   The city has a right to abandon the proceedings for condemnation, and when it does so it will not be liable for the amount of the judgment in an action of assumpsit." In *Chicago and Western Indiana Railroad Co.* v. *Guthrie, supra*, on page 583 it is said: "As to the amount of compensation, the judgment of August 24, 1899, was final,   *   *   *   but not as to the question of the payment of such compensation or the right to possession of the property condemned. Even after affirmance, on appeal, the petitioner had the right to elect to abandon the improvement and decline to make payment of the compensation awarded and take the property condemned. Upon the payment of the compensation the court has jurisdiction to award the possession of the premises to the petitioner, which is the final step in the proceeding." In this case there

was no order of the court for possession, made after the payment of the compensation and damages awarded, but the evidence of payment rests entirely in parol, and under the well settled rule in force in this State the condemnation judgment introduced in evidence did not constitute color of title.

It is not necessary to determine, neither do we determine, what effect a condemnation judgment, followed by an order for possession made after payment of the compensation and damages awarded, would have as color of title, as that question does not arise in this case, no such order having been made.

The cases of *Keener* v. *Union Pacific Railway Co.* 31 Fed. Rep. 126, and *Mobile and Gerard Railway Co.* v. *Cosbill*, 81 Ala. 56, relied upon by the appellant, are not controlling in this case. The *Keener case* arose under a Colorado statute, which provides that the ownership of land shall be adjudged to the extent and according to the purport of his or her "proper title," instead of, as in Illinois, to the extent and according to the purport of his or her "paper title," while the *Cosbill case* was decided under the general limitation statute of the State of Alabama, which provides that "actions for the recovery of lands, tenements or hereditaments, or the possession thereof," must be commenced within ten years after the cause of action has accrued, and does not provide that such possession shall be held under a "paper title."

We are of the opinion that the circuit court erred in refusing to hold the first and second propositions of law submitted by the appellant, and in holding that the appellee had established color of title to said real estate within the meaning of section 6 of chapter 83 of the Illinois statutes, and in finding for the appellee.

The judgment of the circuit court will therefore be reversed, and the cause remanded to that court for further proceedings in accordance with the views herein expressed.                    *Reversed and remanded.*