# PHILLIP STUMPF *et al.*

## *v.*

# CHARLES OSTERHAGE

*Filed at Mt. Vernon September 27, 1884.*

1. CONDITION PRECEDENT—*necessity of showing performance.* A release of a person's interest in land inherited, to a certain other person, to become effective upon a condition precedent to be performed by the releasee, without proof of the performance of the condition, is inadmissible in evidence to show a transfer of the releasor's title, in an action of ejectment.

2. DESCRIPTION *of land in will or deed—of the particularity required.* In ejectment, the will of a person not shown to have had any title to the land in dispute, devising all his real estate generally, without any description, to his sons, equally, is not admissible in evidence to show title, or for color of title, under the Limitation law of 1839. Neither are deeds from persons in whom no title is shown, which show no intention to convey the land in dispute.

3. LIMITATION—*color of title.* A deed made by an administratrix of an estate, though ineffectual to convey title for want of any in the intestate, which properly describes the land in dispute, and purports to convey the same, is admissible in evidence as color of title, under the Limitation law of 1839, and in the absence of evidence of bad faith it will be presumed it was made and accepted in good faith.

4. SAME—*receipts as evidence of payment of taxes.* In ejectment, to recover fifty acres in a survey of four hundred and thirty-two acres, in which the seven years' Limitation law is set up as a defence, tax receipts for the taxes on a part of the survey, without showing what part, are not sufficient of themselves, unexplained, to prove the payment of taxes; but when coupled with the tax books, showing what land was assessed to the person so paying, and his testimony showing his payment of all the taxes, they are sufficient.

5. SAME—*parol evidence as to payment of taxes.* It is competent to prove by parol on what land taxes have been in fact paid, and thus supplement or contradict the evidence of the written receipts for taxes.

6. SAME—*evidence to disprove payment of taxes.* To rebut the proof of the payment of taxes for seven successive years upon a particular part of a tract of over four hundred acres, which is described, the court allowed the other party to prove payment of taxes about the same time on one hundred and twenty acres of the whole tract, and admitted in evidence, over objection, the record of a judgment for taxes against one hundred and twenty acres of land assessed as the property of another person: *Held,* that the court erred in admitting the evidence, as it did not show it was the same land.

7. EVIDENCE—*parol partition—admissions of parties in interest.* Where a parol partition of a tract of land is relied on as having been made many years ago, and the boundary between the several parts is brought into dispute, the declarations of one of the parties to the division, while still an owner of his part, as to the boundary line of his claim, being in disparagement of his title, is competent evidence. So is evidence of the family reputation as to deaths and residences of the members of such family.

WRIT OF ERROR to the Circuit Court of Monroe county; the Hon. AMOS WATTS, Judge, presiding.

This was an action of ejectment, brought by Charles Osterhage, against John Stumpf. A trial was had at the September term, 1873, and a verdict returned for the defendant. A new trial was granted, and the cause again tried at the March term, 1874, resulting in a verdict for the plaintiff, and a new trial granted. At the September term, 1875, a trial was had, and a verdict found for the plaintiff, and a new trial granted. At the September term, 1876, another trial was had, resulting in a verdict for the plaintiff, on which judgment was rendered at the special December term, 1876. This judgment was reversed by this court, and the cause remanded. The death of the defendant was suggested, and his heirs made parties, and the declaration amended. At the March term, 1882, the cause was again tried, resulting in a verdict and judgment for the plaintiff, to reverse which this writ of error is brought.

It was agreed that the land in suit is part of survey 410, claim 672, and that both parties claim title through Leonard Harness, who left the whole claim, undivided, to his three daughters,—Kate, Sally and Mary. The tract contained four hundred and thirty-two acres. On the trial, plaintiff proved, by Anna Clover, the marriage and death of Kate Harness, and other matters relating to the family, such as heirship, etc., and the division and subsequent occupancy of the land.

The defendants offered in evidence a certified copy of a deed from Sally Harness, in the words following:

"Know all men by these presents, that I, Sally Harness, one of the heirs of Leonard Harness, deceased, have, for and in consideration of a bond for a deed this day made by Jacob Clover and William Clover, to me, of one hundred and thirty acres of good, first-rate land, have relinquished all other claim to the lands of the said deceased as an heir, and by these presents, if the said bond is complied with on the part of the signers, to-wit, Jacob Clover and William Clover, I will have no other demand on the land, as aforementioned.

"In testimony whereof I have hereunto set my hand and seal this 8th day of February, 1810.

SALLY HARNESS. [Seal.] "

This instrument was acknowledged before a justice of the peace. On objection by the plaintiff, the court refused to admit it in evidence.

Defendant next offered in evidence a deed reading as follows:

"Know all men by these presents, that we, William Clover, in my own right, and as guardian of Joseph Harness and Polly Harness, do release and forever quitclaim to that tract and messuage of land in the county of St. Clair, Illinois territory, on which Jacob Clover now lives, to the said Jacob Clover, in consideration of $400 to us in hand paid before the delivery of this deed, which said tract contains four hundred acres, more or less.

"Signed, sealed and delivered this 28th day of December, 1811.

WILLIAM <sup>his</sup> × <sub>mark.</sub> CLOVER, [Seal.]

WILLIAM <sup>his</sup> × <sub>mark.</sub> CLOVER, [Seal.]

Guardian of Polly and Joseph Harness.

This was also acknowledged before a justice of the peace. The court, on objection being made, refused to receive the same.

The defendant offered in evidence a copy of the will of Jacob Clover, containing this devise, only:

"I do by these presents give, demise and bequeath unto my wife, Catharine, all and singular my estate, real and personal, money, goods, chattels, rights and credits, of whatever nature or kind soever that unto me belongeth, for and during her lifetime, the same to be at her disposal and use, so long as she shall live. Then, after the decease of my wife, Catharine, it is my will that all the children of mine have my personal estate divided in equal portions among them. But it is my will that my real estate go and be divided to all my sons, only, in equal portions amongst them, for it is my will that my daughters have no share in my lands, but that it be divided, as above stated, in equal portions amongst them, all my sons, as they may attain the age of ·twenty-one years of age. I mean, and I wish it fully understood, that it is my will and desire that my sons have my lands all divided in equal portions amongst them as they come to the age of twenty-one years, notwithstanding they may come to the ... of twenty-one before the decease of my wife, Catharine,—she, my wife, still to have the use of the portions of land of my younger sons until they arrive at the age of twenty-one, aforesaid.

"I do now publish this my testament and last will, hereby revoking and amending all others. In testimony whereof I have hereunto set my hand and seal this sixth day of March, in the year of our Lord 1821."

The other material facts are stated in the opinion of the court.

Messrs. SLATE, TALBOTT & MICHAN, for the plaintiffs in error.

Mr. JOSEPH W. RICKERT, and Mr. SPENCER TOMPKINS, for the defendant in error.

Mr. Chief Justice Scholfield delivered the opinion of the Court:

This is ejectment for a certain tract of land, part of a larger tract, described as claim No. 572, survey No. 410, in Monroe county. Both parties concede that the claim belonged to Leonard Harness in his lifetime, and that upon his death it descended to his three daughters,—Kate, Sally and Mary. There is proof tending to show that in 1810 they made between themselves a parol partition of the claim, whereby they allotted and set apart the northern part to Kate, the middle part to Sally, and the southern part to Mary, and that each took actual and immediate possession of the part so allotted and set apart to her. A small creek runs in a westerly course through the claim, entering its eastern boundary twenty-eight chains and four links south of the north-east corner, and passing out at a point on its western boundary ten chains and eighteen links south of the north-west corner. After entering the claim on the eastern boundary, the creek bears north of west for a short distance, then turns sharply to the south, and runs a little west of south for a short distance, then again turns and runs nearly west for a short distance, and then again turns and meanders in a northwesterly direction to the west boundary line. The plaintiff below, and defendant in error here, introduced evidence upon the trial tending to prove that Sally married John Sheehan, and by him had a daughter, Mary, after which she and her said husband died intestate; that Mary Sheehan married Richard Walton, by whom she had a son, W. R. Walton, after which she and her said husband died intestate; that W. R. Walton conveyed the part of said claim so set apart to Sally Harness, to Wilson & Cahow, by deed dated March 9, 1835; that Wilson & Cahow conveyed the same part to John D. Hagenkamp, by deed dated December 30, 1854, and Hagenkamp conveyed the same part to Charles Osterhage, the defendant in error,

by deed dated February 22, 1871. The contention of the defendant in error is, that he is seized in fee of the part so allotted and set apart to Sally Harness, and that the north line of that part extends to the point on the west line of the claim where the creek crosses it, and extends thence up the line of the creek in a southeasterly direction, following its meanderings, until the point is reached where the line of the creek is farthest south, and thence due east to the east line of said claim. The contention of plaintiff in error is, that there never was any legal partition of said claim, parol or otherwise; that he is seized in fee of the north 151 acres of said tract, including 15 acres in the south-east corner of the north 166 acres of the claim, and that if not seized in fee thereof, he has, at least, color of title thereto, made in good faith, and has been in the continuous, actual possession thereof, and paid all taxes legally assessed thereon, for seven successive years. The tract in controversy, it will thus be seen, is so much of the north 166 acres of the claim as lies south of the creek and the line running due east from the southernmost point of its line to the east line of the claim, and includes, according to the plat filed with the record, $50\frac{34}{100}$ acres.

We see no objection to the ruling of the court below in excluding the records of the deeds by Sally Harness to Jacob Clover and William Clover; by William Clover, in his own right, and as guardian of Polly and Joseph Harness, to Jacob Clover; the will of Jacob Clover; the deed by Elias Clover and wife to John Clover, and the index record of a deed of John Clover to Joseph Lawson. The deed by Sally Harness assumes to convey nothing to anybody,—is but a release, to become effective upon a condition precedent, and there was no offer of any proof of the performance of such condition. There being no sufficient evidence of any conveyance to Jacob Clover of the interest of Sally Harness, and his will not professing to dispose of this property specifically, it was properly excluded. And the same may be said of the other deeds

excluded. They do not profess to convey the property in dis-
pute, and no title being shown in the grantees, there can be
no presumption of even an intention to convey this property
by the use of the general language employed in the deeds.

The ruling, also, in admitting evidence of the declarations
of Kate Clover, as to where was the southern line of her claim,
we think unobjectionable. They were made when she was
still the owner of the property, and were in disparagement of
her title. So, also, the evidence of the family reputation as
to deaths and residences, etc., was properly admitted.

But we are of opinion that the court erred in excluding
evidence of the deed of Ann M. Agnew, administratrix of the
estate of Joseph Lawson, deceased, to William H. Patterson.
Although ineffective as a conveyance of title, it was unques-
tionably color of title. (*Chickering* v. *Failes*, 26 Ill. 507;
*Hardin* v. *Crate*, 60 id. 215.) It includes the land in con-
troversy, and there is no evidence that it was made in bad
faith, and in the absence of this it is to be presumed that it
was made in good faith. *McCagg* v. *Heacock*, 34 Ill. 476;
*Brooks* v. *Bruyn*, 35 id. 392; *Morrison* v. *Norman*, 47 id. 477.

There were a number of tax receipts, showing payments
of taxes on land in claim No. 572, survey No. 410, by John
Stumpf, for the years 1861 to 1871, inclusive. These receipts,
in and of themselves, alone, are defective, in that they do not
show in what part of the claim is the land upon which the
taxes are paid; and the receipt for the payment of the taxes
in 1865 was defective in the description of the property, and
it was also defective, as was likewise that for the year 1866,
and, it may be, that for one other year, in showing a payment
only on some 71 acres, instead of 155 acres. The tax books,
however, were admitted, as we think, properly, to show what
land was assessed against Stumpf for the year 1865, and there
was parol evidence showing on what land the taxes were, in
fact, paid. We have held it is competent to prove by parol
on what land taxes are, in fact, paid, and thus to supplement

or contradict the evidence of the written receipts for taxes. *Rawson* v. *Fox*, 65 Ill. 204; *Milliken* v. *Marlin*, 66 id. 13.

John Stumpf had died after the first and before the last trial in this case. He testified as a witness upon the first trial, and secondary evidence was given, upon the last trial, of what he then testified. A. M. Schlierholz testified that he was a reporter on the first trial, and that he heard John Stumpf then testify, and recollected his testimony; that Stumpf then testified: "I know the land,"—*i. e.*, the land in controversy; "bought it from George Schuermann; took possession of it in 1860; paid taxes, since then, on 151 acres, the Hobbs piece excluded; took possession of land in dispute in 1861, cut wood, cleared the land, and built a house. * * * I paid the taxes for the 151 acres; the land was never sold for the taxes. * * * I paid taxes on the land since I bought it." Then Phillip Stumpf testified, after stating that he knew the land in controversy, and that his father bought it in 1860: "My father and brother and I have lived there since A. D. 1862." This, we think, was sufficient evidence of possession and payment of taxes, unrebutted. But the court, for the purpose of rebutting this evidence, admitted evidence,—over the objection of plaintiffs in error,—of the payment of taxes, during about the same time, on 120 acres of land in claim 572, survey 410, by John Hagenkamp, and also evidence of a judgment against 120 acres of land in the same claim and survey, assessed as the property of John Hagenkamp, for the delinquent taxes of the year 1866. We have been unable to find any evidence that identifies this 120 acres with the land in dispute, and since there are more than 400 acres in claim 572, survey 410, it does not follow that this 120 acres must have been the land in controversy. We are therefore of opinion that the court, in admitting this evidence over the objection of the plaintiffs in error, also erred.

For the errors indicated, the judgment below must be reversed and the cause remanded. *Judgment reversed.*