MARTHA J. BALDWIN *et al.*

*v.*

GEORGE W. RATCLIFF.

*Filed at Mt. Vernon June 16, 1888.*

1. LIMITATION—*as between tenants in common.* Where one tenant in common undertakes to establish an adverse possession of lands as against a co-tenant, in order to constitute a disseizin there must be outward acts of exclusive ownership, of an unequivocal character, overt and notorious, and of such a nature as to impart information, and give notice to the co-tenant that an adverse possession and an actual disseizin are intended to be asserted against him.

2. SAME—*under act of 1839—color of title by will.* A will purporting to devise lands described, when properly probated, is color of title in the devisees, under section 8 of the Limitation law of 1839. The statute does not require that color of title shall be based upon a money consideration.

3. SAME—*color of title—good faith presumed.* In the absence of evidence showing bad faith on the part of the holder of color of title, good faith will be presumed.

WRIT OF ERROR to the Circuit Court of Hardin county; the Hon. ROBERT W. MCCARTNEY, Judge, presiding.

Mr. W. H. BOYER, and Messrs. W. S. MORRIS & SON, for the plaintiffs in error:

At common law there were four modes of alienation or conveyance: First, by deed; second, by matter of record; third, by special custom; and fourth, by will or devise. 1 Blackstone's Com. (Sharswood's ed.) book 2, chap. 19, p. 293.

When land is devised by a man to his heirs, they take by purchase, and not by descent. 1 Blackstone's Com. book 2, chap. 15, p. 442.

As to color of title, see 2 Starr & Curtis' Stat. chap. 83, sec. 6. A will is color of title. *McConnell* v. *McConnell*, 64 N. C. 342.

Color of title does not mean actual title, nor does the question of notice of outstanding title affect it. *Cook* v. *Norton*, 43 Ill. 391; *Woodward* v. *Blanchard*, 16 id. 424; *McCagg* v. *Heacock*, 34 id. 476; *Rawson* v. *Fox*, 65 id. 200; *County of Piatt* v. *Goodell*, 97 id. 84; *Conner* v. *Goodman*, 104 id. 365; *Bride* v. *Watt*, 23 id. 507; *Hassett* v. *Ridgely*, 49 id. 198; *Smith* v. *Ferguson*, 91 id. 304; *Brooks* v. *Bruyn*, 35 id. 392; *Burgett* v. *Taliaferro*, 118 id. 503.

Good faith must be presumed until bad faith is clearly proven. *McCagg* v. *Heacock*, 34 Ill. 476; *Brooks* v. *Bruyn*, 35 id. 392; *Cook* v. *Norton*, 43 id. 391; *Coleman* v. *Billings*, 89 id. 190.

Mr. L. T. TWITCHELL, for the defendant in error:

The Statute of Limitations does not run between tenants in common, and an entry by one is presumed to be for all. Gilbert on Tenures, 28, and note by Watkins; Angell on Limitations, secs. 422, 423; *Stevens* v. *Wait*, 112 Ill. 544; *Busch* v. *Huston*, 75 id. 344; *Ball* v. *Palmer*, 81 id. 370; *Todd* v. *Todd*, 117 id. 92; *Comer* v. *Comer*, 119 id. 170; *Cooter* v. *Dearborn*, 115 id. 509; *Campbell* v. *Campbell*, 13 N. H. 488; *Dowdall* v. *Byrne*, Batt. (Irish,) 373; *Whiting* v. *Dewey*, 15 Pick. (Mass.) 428; *Smales* v. *Dale*, Hobart, 120.

This is true, even though one tenant in common uses and occupies the premises, receives the whole of the rents and profits, and makes improvements thereon. Freeman on Cotenancy, sec. 510; *Todd* v. *Todd*, 117 Ill. 92; *Cooter* v. *Dearborn*, 115 id. 509; *Gilkey* v. *Peeler*, 22 Texas, 663.

Also, where one tenant in common makes a deed purporting to convey the whole of the land, the grantee takes as tenant in common, especially where the parties take by the same deed, or by descent from the same source, and where they are related. *Stevens* v. *Wait*, 112 Ill. 544.

The possession of one tenant in common is the possession of all, and before such possession can become adverse, there must be an actual ouster of an unequivocal character, overt and notorious, and of such a nature as by its own import to give notice to the co-tenants that an actual disseizin was intended. *Busch* v. *Huston*, 75 Ill. 343; *Ball* v. *Palmer*, 81 id. 370; *Todd* v. *Tood*, 117 id. 92.

The fact that Richard Palmer attempted to devise the whole of this land to his heirs, does not destroy the co-tenancy. *Stevens* v. *Wait*, 112 Ill. 544.

A will passes only so much as the testator owns, though it attempt to pass more. *Bradley* v. *Rees*, 113 Ill. 327.

The deed from Mariah Belt and husband to Richard Palmer only purports to convey their interest in the land. This is not color of title to the whole. *Busch* v. *Huston*, 75 Ill. 343; *Dryden* v. *Newman*, 116 id. 186.

The Limitation act of 1839 requires claim and color of title made in good faith. Rev. Stat. sec. 6, chap. 83, (2 Starr & Curtis' ed.) p. 1539.

Color of title is a question of law, and good faith is a question of fact. *Woodward* v. *Blanchard*, 16 Ill. 424.

The act was manifestly intended to protect those who purchase land, and pay their money therefor under the belief that they are acquiring title. *Rawson* v. *Fox*, 65 Ill. 200; *Winters* v. *Haines*, 84 id. 585.

The will in question was a gift of the land.

A volunteer, or one who acquires title without consideration, is not a holder in good faith. *Harpham* v. *Haynes*, 30 Ill. 404.

The doctrine of *laches* is applied only when the delay makes it inequitable to grant the relief sought. *Stiger* v. *Bent*, 111

Ill. 328. Also the relation of the parties is considered. *Ryder* v. *Emrich,* 104 Ill. 470.

*Laches* is not imputed against an infant, but runs only from removal of disability. *Walker* v. *Ray,* 111 Ill. 315.

*Laches* is applied outside of statutory limitations, only when it is sought to enforce an equitable, as distinguished from a legal, claim. 1 Story's Eq. Jur. sec. 529.

Mr. JOHN F. McCARTNEY, also for the defendant in error.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by George W. Ratcliff, against the plaintiffs in error, to partition certain lands in Hardin county, of which Wiley R. Palmer died seized on the 1st day of January, 1853. It is alleged in the bill that Wiley R. Palmer died in Hardin county, January 5, 1853, intestate, the owner of the north-east quarter of the north-east quarter; the north-west quarter of the north-east quarter; the south-west quarter of the north-east quarter; the north-east quarter of the north-west quarter; the south-east quarter of the north-west quarter; the south-west quarter of the north-west quarter; the north half of the south-east quarter; the south-east quarter of the south-east quarter, all in section 4; and the north-west quarter of the north-west quarter, in section 10; and the south-west quarter of the south-west quarter, in section 3,—all in town 12, range 9, in Hardin county, Illinois; that at his death, he left his widow, Mariah Palmer, (afterwards Mariah Belt,) and Nancy, John, Epaminondas and Richard Palmer, his children and only heirs; that the widow afterward married Hiram Belt, and by him had the following named children, born on dates as follows: Arthur H., July 7, 1854; Eliza Ann, September 6, 1856; James D., May 20, 1858; Delilah, September 24, 1860; William G., January 11, 1864; and George W. Belt, January 4, 1867. It is also alleged that Nancy Palmer died unmarried and without issue on the . . . .

day of ......, 1857; that John Palmer died April 6, 1862, unmarried and without issue; that Epaminondas died November 18, 1863, unmarried and without issue. The bill then charges, that on the .... day of ......, 1867, Mariah Belt was the owner of fifty two-hundred-and-twentieths of all of said lands, and that at that time she made a general warranty deed to Richard Palmer, and thereby conveyed to him all her interest in all the lands described in the bill, except the north-west quarter of the north-west quarter of section 10, and the south-west quarter of the south-west quarter of section 3, and ten acres off the east side of the south-east quarter of the south-east quarter of section 4, town 12, range 9,—ninety acres. The bill also alleges that Richard Palmer then took possession of all the lands, as tenant in common, except the ninety acres, and occupied the same until he died,—July 15, 1874; that on the 3d day of June, 1883, James D. Belt conveyed his interest in the lands to complainant; that Delilah Belt married William Lyons, and they, on June 14, conveyed to complainant; that Eliza A. Belt conveyed to complainant on June 23, 1883; that William G. Belt conveyed his interest to complainant October 19, 1883. It is also alleged that Richard Palmer died on the 15th day of July, 1874, testate, and by his will he devised the lands described in the bill to his widow and children, by name.

In the answer it is denied that complainant obtained any title to the lands through the conveyances set up in the bill. It is also set up in the answer that the possession of Richard Palmer was adverse, open and notorious, and continued from 1865 or 1866 until his death; that he cleared the lands and placed them in cultivation, and erected buildings thereon, amounting in value to $2000; that he paid all taxes assessed on the lands. It is also set up in the answer, that the will of Richard Palmer, under which the lands were devised to the defendants in the bill, is color of title, under which they have held the continuous adverse possession of the lands and paid

all taxes thereon for a period of more than seven successive years, and that they rely upon such adverse possession and payment of taxes as a bar to the relief prayed for in the bill.

As to the main facts in this case there is no substantial dispute between the parties. Wiley R. Palmer died seized of the lands described in the bill, January 1, 1853, leaving a widow, Mariah, and four children, John, Richard, Epaminondas and Nancy. The children all died unmarried and without issue, as stated in the bill, except Richard. The widow, Mariah, married Hiram Belt in July, 1853, and subsequently had six children, born at the respective dates stated in the bill. Wiley R. Palmer did not reside on the lands here involved, at the time of his death, but he resided on a farm on the river, in section 21, called by the witnesses the "Walls Place," or the "River Farm." The widow continued to reside on this place until 1857 or 1858, when she moved on her "dower land," so called, which is the ninety acres in sections 3, 4 and 10, named in the bill. There was but a small quantity of the remaining portion of the lands in cultivation prior to 1865. One witness testified that he "tracked deer through the fields in 1864; very little cleared then; a thicket of briers, some old fields with bad fences, no house." Another witness thinks there were fifteen acres cleared. Richard Palmer returned from the army in 1865, and at once went into possession of all the lands, except the ninety acres occupied by the widow. He went in as owner, and at once commenced clearing and improving the lands as fast as possible. He erected two dwelling houses, stable, corn-crib and smoke-house, and also had log houses put up by lessees to reside in while they cleared and cultivated portions of the land. The evidence is clear, that from the time Richard Palmer first took possession of the lands, down to his death, he claimed to be the owner of the absolute title to all the lands. He leased, cut and sold timber, burned lime kilns on the lands, and sold and conveyed eighty acres. The lands were assessed in his name, from year to year, by the

county assessors. He paid all taxes as owner. Soon after taking possession, he entered into an arrangement with his mother, Mariah Belt, by which he conveyed to her the ninety acres, the "dower tract," and she conveyed to him her interest in the other lands. John W. Hughes, a brother of Mariah Belt, heard the contract, and testified to its terms. He further testified: "Richard moved on his part in 1865 or 1866, and began. to build, clear and fence it, and lived on it till he died. His widow and children have controlled and lived on it since, and live on it now. I know of no claim or possession adversely to Richard during this time. I never heard of any one claiming the land adversely to him, till this suit was brought. He put a fine frame building on it, several cabins for renters, and cleared and fenced a great deal of it, and the improvements were of a substantial character."

There is in the record much evidence of this character, and while it is true, where a tenant in common undertakes to establish an adverse possession of lands, in order to constitute a disseizin there must be outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature as by their own import to impart information and give notice to the co-tenant that an adverse possession and an actual disseizin are intended to be asserted against him, as held in *Busch* v. *Huston*, 75 Ill. 345, and subsequent cases, yet we regard the evidence, here, ample for that purpose. If the possession of Richard Palmer was adverse, the possession of the widow and children, who derived title from him by devise upon his death, July 15, 1874, was also adverse.

The next inquiry is, whether the evidence is sufficient to establish color of title in the defendants, and possession and payment of taxes for seven successive years, so as to bring them within the terms of section 8 of the Limitation law of 1839. There is no question in regard to the sufficiency of the evidence to establish possession and payment of taxes for the requisite period, to bar a recovery. Indeed, defendants occu-

pied the lands and paid all taxes for nine years before this action was commenced. The only question, therefore, to be determined is, whether they held under color of title.

The will under which they held was executed by Richard Palmer, properly attested, and probated in the county court of Hardin, in the summer of 1874. In it the lands were de- vised as follows: "I give and devise to my wife, Martha J. Palmer, the north-west quarter of the north-east quarter and the south-west quarter of the north-east quarter of section 4, town 12, range 9 east, in the county of Hardin, and State of Illinois, for her natural life, and at her death, to my son, Wiley R. Palmer, in fee. To my daughter Mary Palmer I give and devise the east half of the north-west quarter of section 4, town 12, range 9, in said county and State, to hold in fee simple. To my daughter Dora Palmer I give and devise the north-east quarter of the north-east quarter and the north-west quarter of the south-east quarter of section 4, township 12, range 9 east, in said county and State, to hold in fee simple. To my daughter Etta Palmer I give and devise the north-east quarter of the south-east quarter, and the west three-fourths of the south-east quarter of the south-east quarter of section 4, township 12, range 9, in the same county and State, in fee simple."

Was this instrument claim and color of title made in good faith? It will be observed that the legislature, in enacting the law, has used no language from which the inference may be drawn that it was intended to confine the words, "claim and color of title," to any particular kind of paper title. The lan- guage used is: "Every person in the actual possession of lands or tenements, under claim and color of title made in good faith, * * * shall be held and adjudged to be the legal owner, etc., to the extent and according to the purport of his or her paper title." There is nothing here requiring a deed, to estab- lish color of title, and under the former decisions of this court color of title may exist without a deed. In *McCagg* v. *Heacock,*

34 Ill. 479, it was held that any instrument indicating an intention to pass a title to lands, of which a description is given, from one party to another, gives color of title to the lands described.   In *Woodward* v. *Blanchard,* 16 Ill. 434, it was held that an auditor's deed, made upon a tax sale, was color of title, without regard to its intrinsic worth as a title and without regard to the constitutionality of the laws under which it was derived.   In *Chickering* v. *Failes,* 26 Ill. 519, a mortgage and decree of strict foreclosure were held to be color of title.   In *Hassett* v. *Ridgely,* 49 Ill. 201, a judgment in a partition proceeding was held to be color of title.   A will is an instrument in writing, and when probated passes title to lands devised therein as effectually as does a deed, and no good reason occurs to us why a will may not be held to be color of title.   By the terms of the will, the lands were directly devised to the persons named in the will, and all claim and title held by Richard Palmer passed, under the instrument, in as complete a manner as if he had executed his deed.   And if a deed is color of title because it purports, on its face, to transfer the title to lands, from one person to another, for the same reason, and upon the same principle, a will like the one here involved must be held to be color of title.   The question here involved arose in *McConnell* v. *McConnell,* 64 N. C. 342, and the court held that a probated will was color of title.   See, also, *Stumpf* v. *Osterhage,* 111 Ill. 82.

But it is said in the argument, there was no consideration for the lands devised, and for that reason the will can not be regarded as color of title.   There is nothing in the statute requiring color of title to be based upon a moneyed consideration, and in the absence of a provision of the statute we are not inclined to adopt a construction of that character.   Natural love and affection is a sufficient consideration to support a deed, and if Palmer had conveyed the lands to his children, before his death, on such a consideration, his deed would have been

color of title, and upon the same principle the will may be regarded as color of title.

As to the question of good faith, alluded to in the argument, the record shows no evidence of bad faith, and in the absence of such evidence good faith will be presumed.

For the reasons given, we think the decree of the circuit court was erroneous, and it will be reversed, and the cause remanded with directions to the circuit court to dismiss the bill.

*Decree reversed.*