# CASES

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1911.

---

John H. Savage, Administrator, et al., Appellees, v.
Lovina B. Luther, Appellant.

### Gen. No. 5409.

1. EVIDENCE—*when hearsay competent.* Hearsay ·is competent upon questions of pedigree and heirship.

2. ADMINISTRATION OF ESTATES—*in whom right of administration not vested.* By section 18 of the Administration Act no right of nomination is conferred either upon the public administrator or creditors entitled to administration, nor is any non-resident entitled to nominate.

3. ADMINISTRATION OF ESTATES—*when appointment of public administrator improper.* It is error to appoint the public administrator upon the petition of creditors filed nine days after the death of the intestate where no emergency exists, and in the event of the existence of an emergency administration to collect should be granted.

4. ADMINISTRATION OF ESTATES—*duties of public .administrator.* It was not intended by the statute to give the public administrator a foothold from which to wrest the administration from the heirs at law. His only proper function is to accept administration when administration is necessary and the specified heirs and distributees have failed to exercise their preference to administer or to nominate within the time given them therefor.

(1)

Appeal from the Circuit Court of Will county; the Hon. FRANK
L. HOOPER, Judge, presiding. Heard in this court at the October
term, 1910. Reversed and remanded with directions. Opinion filed
April 21, 1911. Rehearing denied, additional opinion filed May 25,
1911.

HERMAN WELK and SNAPP & HEISE, for appellant;
FREDERIC C. ELLIS, of counsel.

MORRILL SPRAGUE and JOHN T. WHITE, for appel-
lees.

MR. JUSTICE WILLIS delivered the opinion of the
court.

Mrs. Hortense S. Teeple died at Joliet on March
23, 1909, intestate. On March 30, 1909, Malinda Leh-
man, O. C. Davis, M. D., and George N. Chamberlin
& Son, alleging themselves to be creditors of the de-
ceased, filed a petition in the Probate Court of Will
county, praying that letters of administration on the
estate of said deceased issue to the public adminis-
trator. On April 1, 1909, the Probate Court ordered
letters of administration upon said estate issued to
said public administrator. Thereupon an attorney for
Mrs. Lovina B. Luther, represented to be a sister of
said deceased and a resident of Redlands, California,
objected to said appointment, which objection was over-
ruled and she prayed an appeal to the Circuit Court,
which was granted upon her filing bond within twenty
days. On April 10, 1909, she filed in the Probate Court
certain objections, one of them being that the letters
were granted under a misstatement of facts and that
the court was imposed upon; that the appointment
was a violation of the rule of precedence provided by
statute, being entered before the expiration of sixty
days from the death, when there was a resident next
of kin entitled to a share of the estate, and that the
court had no jurisdiction to make the appointment. On
April 19, 1909, Mrs. Luther filed her appeal bond,
which was approved by order of court. On March

9, 1910, the public administrator entered a motion in the Circuit Court to dismiss said appeal. On May 31, 1910, the motion was heard and on June 2, 1910, it was denied and the case was set for hearing for June 8, 1910. On June 8, 1910, the cause was heard and taken under advisement and on June 10, 1910, the court entered an order finding that said Hortense S. Teeple died at Joliet on March 23, 1909, intestate, leaving no husband, no child, or children, nor any descendant of any deceased child or children, no father or mother, no brother, no sister, residing in Illinois, but left personal property which should be administered; that within sixty days after her death said Malinda Lehman and others petitioned the Probate Court to grant letters of administration to the public administrator; that on April 1, 1909, said matter was heard in the Probate Court and no person entitled under the laws of Illinois to administer appeared in said court and that the court appointed the public administrator; that Mrs. Luther, a sister of deceased, resided in the State of California; that the petitioners as creditors had a right to petition for the appointment of the public administrator within sixty days after the death of the decedent, and that no next of kin entitled to administer or to nominate an administrator had appeared in the Circuit Court asking to administer or to nominate; and the order thereupon proceeded to again appoint the public administrator to administer upon said estate, on giving bond, and directed that the clerk of the Circuit Court certify the order to the Probate Court for the administration of the estate. From that order Lovina B. Luther appeals to this court.

At the trial in the Circuit Court Malinda Lehman was a witness called by appellees, solely to prove that she was a creditor of deceased. The court overruled objections by appellant to her competency to be a witness under section 2 of the Act in relation to

Evidence and Depositions. Her evidence on that subject was immaterial, for appellant admitted that Dr. Davis and Chamberlin & Sons were creditors. But proof that they were creditors was not alone sufficient to show that they were entitled to nominate or administer. The only other evidence appellees offered was a certified copy of the petition filed by said creditors in the Probate Court, signed by the creditors named. They could make no proof in their own favor by mere allegation, and the only positive force of said certified copy of said petition, if it had any, was by virtue of the certified copy of the affidavit of Malinda Lehman to the truth of said petition. By said certified copy of said affidavit to said petition, and by no other proof, appellees showed that Mrs. Teeple died on March 23, 1909, intestate, possessed of a bond and cash and promissory notes, worth about $1,400; that she left surviving her no child or children nor representatives of any child or children, one sister, Mrs. Lovina Luther, a resident of California, and representatives of deceased brothers and sisters, but that no next of kin, who at the time of the death of the intestate would be entitled to a distributive share in her estate, resided in Illinois. Appellant objected to this proof on the ground that the creditors had no right to nominate until sixty days had expired and also that they had no right to nominate at all. The court overruled the objections and appellant excepted. The capacity of the public administrator was admitted. Appellant called Mrs. Lovina Luther Dunlap, a daughter of Mrs. Luther, and a resident of this State, who testified that her mother had a sister named Jane Call; that Jane Call was dead, and that a son of Jane Call, named Ransom N. Call, lived at 4808 Park avenue, Chicago, and had lived in Chicago since the World's Fair, and worked in the Chicago Post Office. It seems to be contended that this evidence was in part hearsay, but hearsay is competent on ques-

tions of pedigree and heirship. Cuddy v. Brown, 78 Ill. 415; Harland v. Eastman, 107 Ill. 535; Stumpf v. Osterhage, 111 Ill. 82; Metheny v. Bohn, 160 Ill. 263; Chilvers v. Race, 196 Ill. 71; Modern Woodmen of America v. Graber, 128 Ill. App. 585. Appellant's counsel then stated to the court that Ransom N. Call had gone upon his vacation at the time the date was fixed for the hearing of this cause and would not be back till June 15th, and suggested a postponement of the hearing till that time and they would then produce Ransom N. Call. The court declined to wait. Appellant then offered in evidence an affidavit of Ransom N. Call, to which an objection was made and sustained. This objection was general only and was not upon the ground that it was an affidavit. Ransom N. Call was competent to testify in the case, and we are of opinion that the general objection interposed could not have been intended by appellees to raise the question whether in this kind of a case proof could be made by affidavit, in view of the fact that they had largely made their proof by affidavit. But if a special objection to that effect had been made, yet as appellees had been permitted to make substantially their entire case by a certified copy of an affidavit of a person of doubtful competency as a witness, the court certainly would, on that account, have been bound also to admit an affidavit on the part of appellant. The principle applicable is laid down in Illinois River Packet Company v. Peoria Bridge Assn., 38 Ill. 467, and Mitchell v. Milholland, 106 Ill. 175. The court therefore should have admitted in evidence the affidavit of Ransom N. Call because it had already admitted a certified copy of an affidavit of Malinda Lehman to establish essential parts of appellees' case. The affidavit of Ransom N. Call gave a full and detailed statement of the heirship of the deceased, and showed that he was a son of Jane Call; that Jane Call was a sister of the deceased, and that Jane Call died prior to the death of said Hortense S. Tee-

ple; that Ransom N. Call lived in the city of Chicago, and had lived in this state for sixteen years; that on April 8, 1909, said Ransom N. Call filed his petition in the Probate Court of said Will county in the matter of said estate, asking that said public administrator be removed, the order of his appointment vacated and that the administration of said estate be committed to said Mrs. Dunlap, a niece of the deceased, and a resident of Cook county; and that said Call and said Mrs. Luther also petitioned said Probate Court on April 10, 1909; and that he thereby exercised his right of nomination vested in him by the statute, and that the Probate Court refused to act on said petition and continued the hearing thereof until the present appeal should be disposed of. It will be observed that these petitions by Ransom N. Call on April 8, 1909, and by Ransom N. Call and Lovina B. Luther on April 10, 1909, were filed in the Probate Court sixteen and eighteen days respectively, after the death of Mrs. Teeple, and nine days before Mrs. Luther had perfected her appeal, and at a time therefore when the Probate Court had complete control of the whole matter.

Section 51 of the Statute of Wills of 1829 directed that administration of the estate of an intestate be granted to the husband or widow or next of kin or some of them, giving the widow the preference, but if no widow or relative of the intestate should apply within sixty days from the death, the Probate Court might grant administration to any creditor who applied for the same, and if no creditor applied within fifteen days after the sixty days, then administration might be granted to any person who the probate judge thought would best manage the estate; and if the intestate was a non-resident or without a widow, next of kin or creditors in this State, but having property within this State then administration should be granted to the public administrator. Section 55 of

the Statute of Wills of 1845 (R. S. 1845 p. 547) is in substantially the same language, as also is section 18 of the Act of 1872 in regard to the Administration of Estates, which forms chapter 3 of the Revised Statutes of 1874, except that the latter section provides that no non-resident of the State may be administrator. Section 18 of said last named Act was amended in 1891 (Laws of 1891, p. 1), the only substantial change being that the surviving husband or wife and the next of kin were not only given the preference for sixty days to administer but they were also for the first time given the right to nominate some competent person within said sixty days. Said section 18 was again amended in 1897 (Laws of 1897, p. 1). The amendment sought to make special provisions for counties having a population of 200,000 or over. Afterwards these provisions were held unconstitutional in Strong v. Dignan, 207 Ill. 385. Up to this time the legislation had been uniform that no creditor had any right of administration or to interfere with the administration during the first sixty days after the death of an intestate, but all right to administer, as well as to nominate an administrator, rested in the surviving husband or wife or the next of kin. There were then and are now and for many years have been other statutory provisions by which where there is a contest as to the right to administer, or any contingency happens causing great delay in administration, the court may appoint a person to collect and preserve the estate until administration is granted, who is to safely keep and deliver the estate to the proper executor or administrator when duly qualified; so that creditors were not without relief if the preservation of the estate required some action before the surviving husband or widow or next of kin had applied for letters or nominated during the sixty days. But the creditors had no right to interfere with administration as such during sixty days following the death.

Said section 18 was again amended in 1905 (Laws of 1905, p. 2). That act is still in force, and if these creditors had the right to nominate the public administrator and secure his appointment on the ninth day after the death of Mrs. Teeple, they acquired it under this last amendment.

Section 18 as amended in 1905, gives the preference in administration to the persons mentioned and in the order there established, the classes entitled being numbered from one to nine, inclusive. The first eight are (1) the husband or wife, (2) the children, (3) the father, (4) the mother, (5) the brothers, (6) the sisters, (7) the grandchildren, and (8) the next of kin. After each of these descriptions of a person or persons entitled to administer is also included any competent person nominated by him, her or them. The ninth is "to the public administrator or to any creditor who shall apply for the same." These words follow: "Provided, that only such persons as are entitled to administer under this act shall have the right to nominate. When several are claiming and are equally entitled to administration, the court may grant letters to one or more of them, preferring relatives of the whole to those of the half blood. Preference and the right to nominate under this act must be exercised within sixty days from the death of the intestate, at the expiration of which time administration shall be granted to the public administrator." Another provision deprives a non-resident of the right to appoint or act. It will be observed that while each of the eight classes first named is given a right not only to administer but also to nominate, no right to nominate is given to the ninth class, consisting of the public administrator and any creditor. While the proviso immediately following says that only such persons as are entitled to administer shall have the right to nominate, it does not say that every person entitled to administer shall have the right to nominate,

and the obvious purpose of the first sentence of that proviso is to prevent any of the first eight classes from nominating if they are non-resident. It is therefore clear that these creditors did not possess the right to nominate, and therefore the Probate Court should not have issued letters of administration to the public administrator upon the nomination of said creditors. We are also of opinion, when this entire section is read, that it was not the intention of the legislature to abandon the statutory policy which had prevailed in this state for over seventy-five years that the surviving husband or wife and the various relatives should have the preference to administer during the period of sixty days after the death of the intestate. The relatives of the deceased are interested in an economical administration of the estate, so that as much as possible may be saved for the distributees. The creditors have no interest except to realize enough to pay their claims. The public administrator obtains his commissions upon the amount which passes through his hands, and he has no personal interest in preserving the estate for the heirs at law. But if this position is not sound, still whatever confusion may have been introduced by the last amendment of said section 18 which places the public administrator and creditors in the ninth and last class of persons specified who may administer within the sixty days, certainly it cannot be held that the previous eight classes of heirs and distributees had lost the right to their preference in the nine days after Mrs. Teeple died which had passed when the Probate Court issued letters to the public administrator on the nomination of creditors, and that the remaining fifty-one days were given by the statute to the public administrator and creditors in which to determine whether they would administer. We are of opinion that if there was any necessity to collect or preserve the estate, an administrator to collect should have been appointed, and that,

as no contingency was shown, the Probate Court could
not entertain a petition by creditors, even to be them-
selves appointed as administrators, on the ninth day
after the death of Mrs. Teeple, but that their applica-
tion should have been refused and that the order made
on their petition should have been set aside by the Cir-
cuit Court. Moreover, as already held, the affidavit of
Ransom N. Call should have been admitted under the
circumstances above set out, and when it appeared
therefrom that the statements in the petition of the
creditors, sworn to by Mrs. Lehman, that there was
no next of kin resident in Illinois, entitled to a dis-
tributive share of the estate, were untrue, and that
Ransom N. Call was a next of kin and was entitled to
a share of her estate, and was a resident of this state,
and that he had petitioned the Probate Court sixteen
days after the death of Mrs. Teeple and nominated a
niece of Mrs. Teeple and a resident of the state to ad-
minister; and that he and Mrs. Luther, a sister of de-
ceased, had again petitioned the Probate Court eight-
een days after the decease of Mrs. Teeple to appoint
said niece, Mrs. Dunlap, administrator, all before the
appeal by Mrs. Luther had been perfected, and that
Call had thereby exercised his right of nomination
twice on the sixteenth and eighteenth days after the
death of Mrs. Teeple, the Circuit Court should by rea-
son thereof have set aside the order of the Probate
Court and certified the cause back to the Probate Court
for its action upon said petitions and nominations. We
cannot concur with appellees in their position that
the entire administration of the estate had, by Mrs.
Luther's appeal, been transferred to the Circuit Court
and that after Call had filed these petitions and made
these nominations in the Probate Court before Mrs.
Luther had filed any appeal bond there, it was neces-
sary for him then to come into the Circuit Court in
this cause and there again within said sixty days from
the death of Mrs. Teeple file his petition and nomi-
nation.

The public administrator has no right to enter into a controversy with the heirs at law of an intestate to prevent their securing their preference to administer or to nominate, nor should he be permitted to resort to any technicality to prevent a resident heir from obtaining administration or nominating an administrator during the sixty days succeeding the death of the intestate. It was not intended by the statute to give the public administrator a foothold from which to wrest the administration from the heirs at law. His only proper function is to accept administration when administration is necessary and the specified heirs and distributees have failed to exercise their preference to administer or to nominate within the time given them therefor. Cotterell v. Coen, 246 Ill. 410; Petteys v. Hutchings, 154 Ill. App. 101.

The order of the Circuit Court is therefore reversed and the cause is remanded to the Circuit Court with directions to vacate the order appointing the public administrator and to certify such action to the Probate Court for its further action in conformity with this opinion.

*Reversed and remanded with directions.*

Upon consideration of a petition by appellees for a rehearing herein the following additional opinion was filed on May 25, 1911.

PER CURIAM: The petition by appellees for a rehearing contends that in the foregoing opinion we have improperly considered the transcript from the Probate Court, which was not offered in evidence, and the affidavit of Ransom N. Call which was not admitted in evidence. This is not an ordinary law suit. The only question before the Circuit Court was whether the Probate Court acted pursuant to law in appointing the public administrator at that time upon the nomination of creditors. We do not concede that the suggestions in the petition for a rehearing are well founded, but if they are, still the reversal and the

directions above given are required, under our construction of the statute, by the evidence admitted to be competent. The public administrator was appointed to administer this estate on the nomination of creditors, while the statute does not give the creditors any right of nomination. This was done nine days after Mrs. Teeple died, while the statute gave the resident next of kin sixty days after her death in which to take out letters of administration or to nominate an administrator. The proof, the competency of which is not questioned, showed that there was an adult next of kin resident in this state. Though Mrs. Luther could not administer or nominate because she was a non-resident, yet the proof shows that she was a next of kin, and she was therefore authorized to protect her interests in the estate and to appeal from an unlawful grant of administration. By the course pursued the adult resident next of kin has been kept out of his right to administer or to nominate for over two years, though he exercised his right of nomination in the Probate Court within sixteen days after Mrs. Teeple died, and before Mrs. Luther filed her appeal bond, and when no question could exist of the authority of the Probate Court to act thereon.

So far as this record shows, creditors began this proceeding. In giving bond as administrator of this estate, the public administrator obeyed the order which section 47 of the Administration Act authorized to be entered in a proper case. What we said in the preceding opinion concerning the duty of public administrators was designed as a guide to that body of public officials. The record before us does not show that the public administrator in this case applied for letters or initiated the proceeding.

The petition for a rehearing is denied.