# CHARLES K. HARLAND

## *v.*

## HENRY B. EASTMAN.

*Filed at Ottawa September 29, 1883.*

1. EVIDENCE—*hearsay—as to pedigree.* Facts involved in a question of pedigree may be established by proof of general reputation in the family, or by proof of what deceased members of the family may have said.

2. The husband of a grandchild will not be allowed to swear to any specific thing which his wife, or either of her uncles, still living, has said in his hearing as to the death of the wife's grandfather, and what heirs survive him; nor can he be allowed to state his conclusions from such unsworn statements, unless all of them taken together, with their surroundings, enable him to say such was the accepted state of the case in the family, or such was the uncontradicted repute in the family.

3. Where a witness called to prove pedigree and heirship, (a relative of the deceased by marriage,) in his testimony shows that his association with

---

the family was so slight that the presumption of his knowledge arising from that relation is entirely rebutted by his own statements, and there are other living members of the family, or relatives, living and within the reach of the process of the court, his testimony as to facts he has heard from his wife will not suffice to prove the heirship.

APPEAL from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.

This is an action of ejectment, brought by appellee, against appellant, claiming title in fee to lot 45, block 37, in school section addition to Chicago, and for the possession thereof. The plea is not guilty.

Plaintiff claims that one Abraham B. Adams was the owner in fee, and seeks to show title in himself through three deeds, executed, one by Enoch E. Adams, one by Alfred A. Adams, and one by Adelaide B. Pate, each purporting to convey to plaintiff an undivided one-third of said lot. The proof shows that Abraham B. Adams died in 1872 or 1873, and these deeds were made in 1880 and in 1881. To show title in plaintiff it was necessary to show title in these grantors. To do this he undertook to prove that these three grantors constituted the only heirs at law of Abraham B. Adams, deceased. To this end he introduced as a witness J. C. Tucker, who testified that he lived in Chicago from 1856 to 1860, "and off and on, then, until 1875," when he moved back to Chicago, and had lived there ever since; that he knew Abraham B. Adams in his lifetime; first saw him in 1863; he then lived on this property and had a wife living with him, and witness saw him once afterwards, two to five years later; that witness knew two of his children; that there were three, —Enoch E., Alfred A., and Sarah; that Sarah was married, and afterwards died, some thirty years ago,—before the witness knew the family; that witness married a daughter of Enoch E. Adams,—a grand-daughter of Abraham B. Adams; that when Sarah died she left one child, who married one A. B. Pate, and is now living, and is Mrs. A. B. Pate; that

Sarah left no other child. (At this stage of the testimony defendant moved to exclude from the jury this testimony as to Sarah and her children. The motion was denied, and defendant excepted.) The witness further testified that Enoch Adams and Alfred are both living, now, in the State of Illinois, and that Mrs. Pate lives in Ohio.

On cross-examination the witness stated, that when he first saw Abraham B. Adams, in 1863, the wife of witness was with him, and they stayed about two hours; that witness then lived at Cincinnati, and had never seen him before, and on the subsequent visit he stayed about an hour,—and this is all the acquaintance he had with him; that he has no personal knowledge of his death or his wife's death; that he never saw Sarah, or knew her or her family, or of her death, except from the relatives of the wife of witness; that he never heard that Sarah ever had more than one child; that Abraham B. Adams was married twice; that Alfred A., Enoch E., and Sarah, were all children by his first wife; that when witness called, as above stated, Abraham B. Adams was living with his second wife; that witness never heard of any children by her. The witness then stated that *all he knew about these things* was hearsay, from his wife and her relatives.

Michael O. Day, a witness for plaintiff, testified that in 1856 or 1857 he heard Abraham B. Adams say he had a son,—a boy with a farm,—in Ohio, somewhere; and that this was before he took his second wife.

Timothy Lorden, another witness for plaintiff, who had lived for twenty-six years within fifty feet of the property in controversy, and became acquainted with Abraham B. Adams in 1856, and knew him ever after while he lived upon this property, testified that he never knew of any children by the second wife.

This was all the testimony relating to the inheritance from Abraham B. Adams. After plaintiff closed his proofs, de-

fendant moved to exclude the testimony given, but the motion was overruled, and defendant excepted. After verdict for plaintiff, a motion for a new trial, by defendant, was overruled, to which defendant excepted, and thereupon judgment was given for plaintiff. This is an appeal by defendant from that judgment.

Mr. ALLAN C. STORY, for the appellant.

Messrs. J. P. & T. R. WILSON, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

The motion for a new trial ought to have been sustained. The testimony in the case palpably failed to show that the three grantors in the deeds to plaintiff were the heirs, and only heirs, of Abraham B. Adams. Facts involved in a question of pedigree may be established by proof of general reputation in the family, or by proof of what deceased members of the family have said. From the necessity of the case hearsay evidence of certain kinds is admissible in establishing matters of pedigree, and this because it is the best evidence of which the nature of the case admits. What has been said by deceased members of the family is admissible, upon the presumption that as such members they knew, from general repute in the family, the facts of which they speak. Now, while such a presumption as to the husband of a grandchild of the intestate may, under some circumstances, prevail, still when, on cross-examination, it is shown that two of the children of the intestate are living, and within the reach of the process of the court, it will not do to say that the testimony of such a witness shall be deemed sufficient where he shows he has no personal knowledge on the subject, and fails to show a general reputation in the family in support of what he had heard, and merely says he learned so and so from conversations with his wife and her relatives. Such

conversations may have been such in extent and variety, and may have been held under such circumstances, as to enable a witness to say that such was the reputation in the family, but such conversations may not have been such. The witness surely could not be permitted to swear to any specific thing which his wife, or either of her uncles, had said in his hearing, because they are all living, and their sworn testimony is better than their unsworn statements. It follows, the witness can not properly be allowed to state his conclusion from such unsworn statements, unless all of them taken together, with their surroundings, enable him to say such was the accepted state of the case in the family, or such was the uncontradicted repute in the family.

Again, while the witness says Abraham B. Adams had three children, (Enoch, Alfred and Sarah,) he nowhere says, distinctly, that these were his *only* children; and while he undertakes, in speaking of Sarah, the aunt of his wife, who died many years before the witness knew the Adams family at all, to say she left only one child, who is still living, and the wife of one A. B. Pate, he nowhere tells the given name of that child, or shows that she was the *Adelaide* B. Pate who made the deed to plaintiff. If it be true that the several grantors in these three deeds were really the only heirs at law, it can readily be proven by these three living witnesses. While the witness produced is a relative of deceased (Adams) by marriage, yet his own testimony shows that his association with the family was so slight that the presumption arising from that relation of his knowledge on the subject is entirely rebutted by his own statements. For this reason, if for no other, the judgment ought to be reversed, and another trial had.

The judgment is reversed and the cause remanded.

*Judgment reversed.*