GRAND LODGE, ANCIENT ORDER OF UNITED WORKMEN, V. FRANTISKA BARTES.*

FILED JULY 3, 1903.   No. 13,086.

Witness: EVIDENCE OF AGE. A member of a family, living therein, is presumptively qualified as a witness to prove the age and pedigree of the other members; but when it is shown on cross-examination that the knowledge of such witness is derived, not from family tradition and repute, but from statements made by a stranger, the testimony should be excluded.

ERROR to the district court for Colfax county: CONRAD HOLLENBECK, DISTRICT JUDGE. *Reversed.*

*W. P. Hall* and *Matthew Gering,* for plaintiff in error.

*Frank Dolezal, contra.*

* Rehearing allowed. See opinion, p. 636, *post.*

DUFFIE, C.

This action is brought to recover upon a benefit certificate issued by the plaintiff in error to Joseph Bartes, the husband of the defendant in error, and in which she is named as the beneficiary. The only defense urged, and the only question tried, was the age of the decedent at the time of making application for admission to the order; section 1 of article 2 of its constitution and by-laws providing that "no person shall be admitted to membership in the order except that he be a white male of the full age of twenty-one years and under forty-five years at the time of receiving the workman degree."

Joseph Bartes' application for beneficiary certificate bears date June 29, 1894, in which he states that he was born on the 25th day of December, 1849, at Moravia, Europe. He died as the result of an accident on February 25, 1898. In the investigation following his death the plaintiff in error obtained from Mrs. Bartes what is termed a "birth certificate" of her husband, in which it is recited that he was born on the 23d of December, 1846. On the trial, no witness made any direct statement as to the age of Joseph Bartes, but his mother testified that she was married to his father on February 3, and on Christmas of the same year of the marriage her son Joseph was born; that his father died in January, 1900, and that she had lived with him fifty years, lacking about three weeks; that they were preparing to celebrate their golden wedding at the time of his death. Accepting this as a correct statement of the facts, it would establish that Joseph Bartes, the deceased, would have been fifty years of age on the 25th of December, 1900, and that he was born in 1850. On her direct examination the plaintiff in error testified as follows:

Q. Mrs. Bartes, do you know how old Mr. Bartes was when you married him?

A. Yes, sir.

Q. You may state how old he was when you married him.

A. He was twenty-seven years old.

Q. How long were you married to him before he died?

A. It would be twenty-five years if he was living now.

Q. Would it be twenty-five years this year?

A. Yes, sir, this fall at All Saints day.

She could not give the year of the marriage but, as her husband had been dead two years, her testimony corroborates that of her mother-in-law, and fixes the age of Joseph Bartes at the time of his death between forty-seven and forty-eight years.   On cross-examination Mrs. Bartes testified as follows:

Q. How long had you known Mr. Bartes before your marriage?

A. I only knew him when I was married.

Q. Did you know Mr. Bartes a year before you married him?

A. No, sir.

Q. How do you know that your husband, Joseph Bartes, was twenty-seven years of age, twenty-five years ago, when you married him?

A. From the publication of the banns.   *   *   *

Q. Is the only way that you know the age of your husband, Joseph Bartes, at the time of your marriage, what the priest announced at the banns?

A. No other way.

Q. In speaking about the banns being announced, do you mean that the preacher or priest announced it from the pulpit to the congregation that you and Mr. Bartes were engaged?

A. Yes, sir.

Q. Announced it orally?

A. Yes, sir.

Q. Now, from the time that you heard the announcement made by the priest of the banns of marriage, have you ever had occasion to think of or consider your husband's age until this case was begun?

A. I never did.

Q. You never talked with your husband about his age?

A. No, sir.

Q. And any information about your husband's age was gained from the announcement made by the priest at the time the banns of marriage were announced?

A. Yes, sir, that is it.

At this point the defendant moved the court to strike out all the evidence of Mrs. Bartes as to the age of her husband, for the reason that there was no foundation laid for such evidence and the witness had not shown herself competent to testify as to his age, and that the only statement as to his age is the statement made by the priest who announced the banns, the same being hearsay and an improper method of proving age. This motion was overruled and defendant excepted.

The date of a person's birth may be testified to by himself or by the members of his family, although he must, and they may, know the fact only by hearsay based on family tradition. No rule is better established than this one; and when it is shown that the witness is a member of the family of the person whose age is the subject of inquiry, the presumption obtains that the witness is competent without laying any foundation therefor; but on cross-examination it may be shown that, although a member of the family and *prima facie* qualified to testify as to age or pedigree, the witness is not qualified, either because he has no knowledge in fact on the question involved, from not having heard it discussed, or that his opportunities for obtaining knowledge on the question have been insufficient to make him a competent witness. *Harland v. Eastman,* 107 Ill. 535.

In the case cited, it is said:

"Such conversations may have been such in extent and variety, and may have been held under such circumstances, as to enable a witness to say that such was the reputation in the family, but such conversations may not have been such. The witness surely could not be permitted to swear to any specific thing which his wife, or either of her uncles, had said in his hearing, because they are all living, and

their sworn testimony is better than their unsworn statements. It follows, the witness cannot properly be allowed to state his conclusion from such unsworn statements, unless all of them taken together, with their surroundings, enable him to say such was the accepted state of the case in the family, or such was the uncontradicted repute in the family."

Mrs. Bartes, on her cross-examination, gave the source of her information as to the age of her husband at the date of her marriage. This information came from the priest and not from any member of the family; and she further testified that it was the only information relating to his age, at that time, of which she was possessed. In this state of the case we have no hesitation in saying that she showed herself incompetent to testify, and that it was error not to exclude her testimony upon the motion made therefor. It is true that she was afterward recalled and the following question asked her:

Q. Mrs. Bartes, was it not talked of between you and your husband; that is, I mean, when you were together did you not sometimes talk over the fact of how old you were or how old he was?

A. We never talked about our age; once in a while he spoke of his birthday, once in a while we talked of our birthdays. She further testified that both her father-in-law and mother-in-law lived with them in their family; and was then asked this question:

Q. Now, Mrs. Bartes, in your talks—that is in your family talks between your husband and yourself and his father and mother—was it ever talked of how long you had been married to your husband and how long you lived together; that is, before his death?

A. Yes, sir, it was talked.

Q. Now, Mrs. Bartes, from your living together with the father and mother of Joseph Bartes, your husband, and they with you, do you know what day their wedding anniversary came in the year?

A. Yes, sir, it came on the 2d of February.

It is insisted that, because of these people all living together, she was qualified to speak of the age of her husband at the time of their marriage. Presumptively this is true, but, as before stated, she by her own declarations has shown her disqualification, her only knowledge upon that subject having come from the declaration of a priest whom it is not claimed would be qualified as a witness upon that question. What weight the jury may have attached to this testimony we can not of course say, but it was submitted to them with other competent testimony as to the age of Joseph Bartes and it may, or may not, have controlled their verdict. For the error in submitting this evidence to the jury, we recommend a reversal of the judgment and that the cause be remanded for another trial.

POUND and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for another trial.

REVERSED.

The following opinion on rehearing was filed February 17, 1904. *Former judgment of this court vacated. Judgment of district court affirmed:*

1. **Competency of Wife to Testify to Age of Husband.** The plaintiff, wife of the deceased with whom she had lived for twenty years before his death, and to whom she had talked regarding his birthday at different times, and who had a general acquaintance with the family history and tradition, *held* to be a competent witness to testifiy as to the age of her deceased husband.

2. ———: PRESUMPTION. A wife who has lived for twenty years with her husband will be presumed to know his age and to be qualified to testify thereto, unless the contrary clearly appears from the record.

3. **Date of Birth: EVIDENCE.** The date of a person's birth may be testified to by members of his family, although they may know of the fact only by hearsay founded on family tradition.

4. **Qualification of Witness.** Because the first knowledge obtained by a wife as to her husband's age is derived from an incompetent

source, this will not disqualify her from testifying as to his age, where, by reason of her membership in the family, knowledge of such fact is obtained from other sources to which no valid objection applies.

5. **Evidence.** Evidence examined and *held* sufficient to sustain the verdict of the jury.

6. **Instructions.** Alleged errors in giving and refusing to give certain instructions duly excepted to examined and *held* not well taken.

7. **New Trial:** NEWLY DISCOVERED EVIDENCE. An application for a new trial on the ground of surprise and newly discovered evidence is addressed to the sound discretion of the trial court; and its ruling thereon will not be disturbed, unless there is an abuse of discretion shown.

8. ——: ——: DILIGENCE. Before the defendant is entitled to a new trial on the ground of newly discovered evidence, it must appear that due diligence was exercised to procure such evidence upon the original trial, and that it is through no fault or neglect of the party making the application that such evidence was not then produced.

9. ——: RULING. The ruling of the trial court on the application for a new trial, on the ground of surprise and newly discovered evidence, *held* to be without prejudicial error.

## HOLCOMB, C. J.

This cause is submitted on rehearing. The consideration given the case and the recommendations contained in the former opinion (*ante,* p. 631) resulted in a reversal of the judgment of the trial court on the ground of error in not withdrawing from the jury certain evidence given by the wife of the deceased with reference to his age at the time of the execution of the contract on which is based plaintiff's right of action. The plaintiff instituted an action to recover on a policy of insurance or benefit certificate issued by the plaintiff in error, a fraternal beneficiary association, to her deceased husband, who, during his lifetime, had become a member of one of its local lodges. As a defense the association pleaded that the deceased, at the time of the issuance of the beneficiary certificate and in making application therefor, had misrepresented his age, and that he was, at the time of his admission as a member of the local lodge and the issuance of the certificate, be-

yond the age provided for by the laws of the organizatio·: and the statutes of the state, to wit, more than 45 years of age. This was denied by the beneficiary, the plaintiff in this action, and the wife of the deceased. On this issue of fact hinged most of the evidence submitted in the case. The wife as a witness in her own behalf testified as to her husband's age at the time of their marriage, and the date of their marriage, thus necessitating only a mathematical calculation to determine his age when he applied for membership in the local lodge.

The plaintiff was of Bohemian nationality and required the assistance of an interpreter in giving her testimony. On cross-examination it was developed, as is set forth in detail in the former opinion (*ante*, p. 631) that her first knowledge as to the age of her husband was gained by the public announcement of the parish priest in her native country of the marriage banns, a short time prior to its celebration, which was according to a custom there obtaining. After drawing from the witness the information that this was the first and only means by which she knew her husband's age, at the time of their marriage, the witness was further asked on cross-examination if she had ever talked with her husband about his age, and answered in the negative. She was then asked: "And any information about your husband's age was gained by the announcement made by the priest at the time the banns of marriage were announced?" She answered: "Yes, sir, that is it." Because of the source of the witness' knowledge of her husband's age as thus elicited on cross-examination, a motion was made to strike out all her direct testimony relating to his age; and the refusal of the court to strike out such testimony, it was thought and so held in the former opinion, constituted prejudicial error for which the judgment of the trial court should be reversed.

It is not altogether clear that the witness is disqualified from testifying relative to the age of her deceased husband, conceding the correctness of the premises of counsel for defendant, as to the announcement of the parish priest of

the marriage banns being the exclusive source of the wit-
ness' knowledge regarding the fact testified to.

The announcement was in its nature a public or *quasi*
public proclamation. It was made as a part of a cus-
tomary proceeding leading up to the performance of the
marriage rite. It may be presumed to have been made
upon the authority, in the presence, and with the consent
of the deceased, the prospective bridegroom. It may pos-
sibly be said to be equivalent to a public declaration by
him of his age, and, under a well recognized rule govern-
ing hearsay evidence of this character, since his decease,
may be testified to as a declaration made by one compe-
tent to testify to pedigree, had he been living. We do not,
however, care to be understood as resting our decision on
this proposition, and do not do so.

An examination of the entire record satisfies us that
the witness was competent for other reasons to testify
regarding the age of her husband. While the cross-exam-
ination standing alone would seem to limit her knowledge
to that gained from the publication of the marriage banns,
taking all of her evidence, as disclosed by the record, it is
manifest that such is not the case. Admitting her first
information to be from an incompetent source, it is ap-
parent that she was qualified to speak regarding the mat-
ter testified about from her relationship to her husband,
as a member of the family, and because of knowledge
gained thereby in relation to the general repute and tradi-
tion in the family concerning the birth, age and pedigree
of her deceased husband. She had lived with him over
twenty years. She says that they at times spoke about
their birthdays. It is hardly conceivable that, where the
family relations had been sustained for this length of
time, a member of such family during the whole of such
period was not qualified to speak of matters pertaining to
the pedigree of other members of the family of like stand-
ing. A birthday may not be an epoch in the life of a per-
son, but it is at least an event, an incident of which note
is usually taken by the several members constituting the

family. The birthday and the age of an individual can hardly be disassociated. To talk of or discuss the birthday of one, and especially a member of the same family, comprehends ordinarily the age as well as the anniversary. The thought may be suggested in innumerable ways, without a direct discussion of the age as if it were a matter of controversy or doubt. We are quite confident that although the plaintiff says on cross-examination, when her attention was challenged directly to when she first learned his age, she had no other knowledge on the subject than that learned by the publication of the marriage banns, her subsequent membership in the family for over twenty years afforded opportunities for knowledge and information on the subject, wholly outside of and regardless of the knowledge thus first acquired, which well qualified her to testify as to his age, and that such relationship brings her altogether within the rule of law governing the competency of witnesses regarding such matters. The law presumes, and rightly so, that such a member of the family is qualified as a witness to prove the age of other members. It is also disclosed by the record that the parents of the deceased lived in his family, and as members thereof, during nearly the whole of the married life of their son; that the deceased was the oldest son; that he was born in December of the first year of their marriage which occurred in February; that the parents were rounding out fifty years of wedded life and making preparations for the celebration of their golden wedding anniversary a short time prior to the death of the father. It is scarcely believable, under these circumstances, that the wife of the deceased and daughter-in-law of the parents was not only presumptively, but actually and in fact acquainted with the exact age of her deceased husband, and of the family history and tradition, and, of course, qualified to speak on the subject. The plaintiff in her testimony speaks of the wedded life of her husband's parents, the date of their wedding anniversary and the near approach of the golden wedding anniversary. It is, we think, clearly inferable

from the record that her relationship to the family, her long membership therein, and her acquaintance with the family history and tradition were such as to qualify her to testify to the pedigree of any member thereof, as was her mother-in-law or would be her husband had he been living. The rule is uniform that the date of a person's birth may be testified to by members of his family, although they may know of the fact only by hearsay founded on family tradition. Such evidence is admitted as coming within the rule of hearsay in matters pertaining to pedigree, which embrace not only descent and relationship, but also the facts of birth, marriage and death and the times when they occurred. *Houlton v. Manteuffel,* 51 Minn. 185, 53 N. W. 541; 1 Greenleaf, Evidence (16th ed.), sec. 104; *Hill v. Eldridge,* 126 Mass. 234; *Commonwealth v. Stevenson,* 142 Mass. 466, 8 N. E. 341; *Cheever v. Congdon,* 34 Mich. 296.

Treating, for present purposes, the knowledge of the wife gained from the publication of the marriage banns as coming from an incompetent source, we can not regard this as sufficient grounds for excluding her evidence in chief touching the age of her deceased husband, or for holding her incompetent to testify on the subject. Her competency does not rest on her right to testify to declarations made by those who were qualified to speak when the declaration was made but whose testimony by reason of death or other causes can not be obtained. Her qualification to speak of the family tradition regarding age, pedigree, etc., is bottomed on her membership of long standing in the family, and the knowledge of matters pertaining to the pedigree of other members acquired thereby. That she did have such general knowledge which renders her competent to testify is, we think, disclosed by the record. The incompetent source of her knowledge first obtained could, at most, be considered only for the purpose of affecting her credibility or the weight to be attached to her evidence. Her competency to testify as a witness has its origin in knowledge and information coming from

44

other sources and in other respects to which no valid ob-
jection applies. *Cook v. Carroll Land & Cattle Co.*, 39 S.
W. (Tex. Civ. App.) 1006. We are, for the reasons stated,
of the opinion that no error was committed by the trial
court in refusing, on the defendant's motion, to strike out
all of the evidence of the plaintiff touching the age of her
deceased husband because of her alleged disqualification.

Other errors are argued by counsel for plaintiff in error
in their brief filed in the case, none of which appeal to us
as of such a substantial character as to call for a reversal
of the judgment entered in the court below. The whole
of the controversy centered on the point relating to the
age of the deceased. The testimony was directed almost
exclusively to this one issue. The court, by its sixth in-
struction, told the jury that if the age of the deceased, at
the time he applied for membership, was found to be
above that allowed by the laws of the association, the
plaintiff could not recover. This issue of fact was by the
jury found against the defendant. While it is urged that
the evidence is insufficient to support the verdict, we are
satisfied from examination of the record that such is not
the case. The wife and the mother of the deceased both
testified regarding his age, and from the evidence of both,
or either, the inference is fairly justifiable that his age
was not misrepresented in his application for the benefit
certificate of insurance. While there is some parol and
documentary evidence apparently supporting the conten-
tion of the defendant, this evidence, as found by the jury,
must give way to the positive and direct testimony of the
living witnesses qualified to speak on the subject.

The giving and refusing to give certain instructions are
also excepted to, but, in view of the clear cut instruction
of the court, to which we have referred, submitting the
issue of fact in as favorable light as the defendant could
rightfully ask, no prejudicial error was committed in the
ruling of the court on the instructions given and refused,
of which complaint is made.

Error is also sought to be predicated on the ruling of

the trial court in refusing to grant a new trial on the ground of surprise and newly discovered evidence. The evidence which it was sought to procure, and on which the application was based, was in relation to records and documents supposed to be in existence in the foreign country, from which the family of the deceased and his parents' family emigrated to this country. Such records, it is claimed, would show the ages and date of the marriage of the parents of the deceased, and from these could be determined more accurately the latter's age. We find no ground for entertaining the view that the trial court abused its discretion in respect of the application for a new trial on the grounds advanced therefor. The issue as to the age of the deceased was raised by the pleadings in the case, and regarding which the defendant was advised from the time of the filing of the answer. No effort was made to secure the evidence now sought to be obtained. The evidence is not only in its nature cumulative, but its existence is largely a matter of conjecture or speculation. While it is urged that the defendant was misled by the character of the answer, and was led to believe the plea of waiver would probably be relied on by the plaintiff, to avoid the consequences of the alleged misstatement as to age, it is manifest that the issue of fact as to age of the deceased was put directly in issue, and, to maintain its side of the controversy, it was incumbent on the association to make all reasonable effort and exercise due diligence to procure all the evidence in support of such issue reasonably obtainable, and that the evidence now sought to be obtained might, if in existence, have been secured by the exercise of such reasonable effort and due diligence. The court's ruling in respect of the matter now being discussed was, we are disposed to think, proper, and error can not successfully be predicated thereon. From a consideration of the entire record and of the errors assigned, we arrive at the conclusion that the judgment of the trial court was right and should not be dis-

turbed. The judgment of reversal heretofore entered is vacated, and the judgment of the trial court is

AFFIRMED.