CLARA HART, ET AL., APPELLEES, V. KNIGHTS OF THE MACCABEES OF THE WORLD, APPELLANT.

FILED FEBRUARY 6, 1909. No. 15,417.

1. Insurance: PROOF OF LOSS: CONCLUSIVENESS. Statement in the proof of loss, as to the cause of the death of an insured, may be contradicted on the trial of an action on the policy of insurance, unless the usual elements of equitable estoppel are present.

2. ———: ACTION: EVIDENCE. A fraternal insurance company cannot have the benefit of its by-laws and amendments thereto, in defending against a death claim, unless certified copies of such by-laws and amendments have been filed with the auditor of public accounts.

APPEAL from the district court for Dodge County: CONRAD HOLLENBECK, JUDGE. *Affirmed.*

*Hainer & Smith* and *D. D. Aitken,* for appellant.

*Grant G. Martin* and *Courtright & Sidner, contra.*

DUFFIE, C.

November 14, 1902, William F. Hart became a member of a subordinate lodge of Maccabees, known as the "Hooper Tent, No. 75," and on that date there was issued to him the beneficial certificate sued on in this action. In its answer the defendant alleges that at the time of securing admission into the Maccabees section 430 of its laws was in force, and is as follows: "Section 430. No benefit shall be paid on account of the death or disability

of any member while engaged in a mob, riot or insurrection, * * * or who may be injured or killed in any quarrel, controversy or any fight in which such member may be the offending party." The answer further alleges that after Hart became a member, and in 1904, the Maccabees revised their laws and enacted the following sections: "Section 404. QUARREL OR FIGHT. No benefit shall be paid on account of the death or disability of any member who has been killed or injured in a quarrel, controversy or fight in which such member is the offending party." "Section 405. VIOLATING LAW. No benefit shall be paid on account of the death or disability of a member who dies or becomes disabled in consequence of a violation or attempted violation of the laws of any state, district, territory or province, or in consequence of resisting arrest." Sections 372 and 373 of the laws of the order, relating to proofs of death, are set out in the answer, and it is then alleged that Hart came to his death while engaged in a quarrel in which he was the offending party, and a copy of the finding of the coroner's jury is set out in the answer, showing that Hart "came to his death by a bullet from a revolver of 45 caliber in the hands of one Frank Owens, and was fired in self-defense, and for the protection of his mother, and we, the jury, believe the act was justifiable." From a judgment in favor of the plaintiffs the defendant has appealed.

It is insisted by the defendant that as proofs of death made by the plaintiff show that Hart was killed while engaged in an altercation, and that his killing was justified by the circumstances, the evidence which established his death also established that his death occurred under such circumstances as exempted the defendant from any liability on account thereof, and that the defendant's motion for an instructed verdict in its favor should have been sustained.

Relating to the proof of death, it is clearly shown that it was prepared by the officers of Hooper Tent, No. 75, and that Mrs. Hart, who signed it, had little or no knowledge

of what it contained, and no knowledge of the finding of the coroner's jury being made a part thereof. The general rule appears to be that the burden of proving that death ensued while deceased was engaged in some act violative of the rules of the order is on the defendant company, though the proof of death offered by the plaintiffs may recite facts from which such violation of the rules may be presumed. In *Supreme Tent, K. M. W., v. Stensland*, 206 Ill. 124, the by-laws of the defendant company provided that, if the insured committed suicide, whether he was sane or insane at the time, no benefit should be paid, and the proofs of death contained a statement taken from the verdict of the coroner's jury that the cause of death was suicide by strangulation. In that case the defendant company insisted that the plaintiff and beneficiary was estopped from showing that death arose from any cause except that shown in her proofs made to the company. The court said. "While there may be some slight authority for the contention of appellant, we are convinced that reason and the great weight of authority are with the rule which permits the statements in the proof of loss to be contradicted on the trial, unless it appears that the usual elements of equitable estoppel are present." A further statement of the court in that case describes 'almost the exact condition relating to the proofs of death in the case we are considering, and is as follows: "The rule insisted upon by appellant is that before the statements in the proof of loss can be contradicted the plaintiffs must show that they were made by mistake or produced by fraud. The evidence shows that the plaintiffs knew nothing as to the cause of death. * * * She swears that the agent of the insurance company prepared the proof of loss and that she did not read it before she signed it. * * * But even granting that she knew and comprehended, at the time, that the proof of death contained the statement that the death was from suicide, still no estoppel arises, for the reason that the statement that the death resulted from suicide by strangulation was a mere opinion." See,

also, *Cluff v. Mutual Benefit Life Ins. Co.*, 99 Mass. 318;
*Bankers Life Ass'n v. Lisco*, 47 Neb. 340; *Dougherty v.
Pacific Mutual Life Ins. Co.*, 154 Pa. St. 385.

The defect in the defendant's evidence to sustain its
defense lies back of this, and arises from its failure to
show that the by-laws of the order, relied on as a forfeiture
of the certificate issued to the deceased, were in force in
this state.   Section 6656, Ann. St. 1907, is in the following
words:  "Every such society shall file with the auditor
of public accounts a copy of its constitution and by-laws
duly certified to by the secretary or corresponding officer,
and before any amendment, change or alteration thereof
shall take effect or be in force a copy of such amendment,
change or alteration, duly certified to by its secretary or
corresponding officer, shall be filed with the auditor of
public accounts."   It appears from the deposition of John
L. Pierce, deputy auditor of the insurance department of
this state, that copies of the laws of the Maccabees, revised
and amended July, 1904, were filed in the office of the
auditor of state December 16, 1904.   The certificate of
the supreme record keeper of the Knights of the Maccabees
is a printed form, and the signature of the grand record
keeper is not in his own handwriting, but is also printed.
The certificate bears the impression of the seal of the order,
but contains no venue, which may not be a fatal defect;
but as we construe it, the statute above copied requires the
certificate to be under the hand of the secretary, as well
as under the seal of the order.   Attached to the deposition
of the supreme recorder of the order, which was read in
evidence by the defendant, was a printed book, entitled,
"Revised Laws of the Knights of the Maccabees of the
World, Edition of 1901," and the grand record keeper
testifies that said pamphlet contains a true copy of the
laws of the order in force November 8, 1902, when Hart
was admitted to membership.   There is no evidence
coming from the grand record keeper, or from the office
of the auditor of state, or from any other source, that these
laws were ever filed in the office of the auditor of state,

or that the defendant order had taken any steps which would make their laws competent evidence in this state in defense of a suit brought on a certificate of membership.

It is familiar law that no presumption will be indulged in favor of a forfeiture, and the burden of proof, where the society seeks to escape liability on that ground, is upon the society. An allegation in the petition that all the conditions in the contract were fulfilled by the assured, even when denied by the answer, does not impose on the plaintiff the burden of proving that each condition was fulfilled; but, when the breach of any particular condition is relied on as a defense, the burden of proving it is upon the society. 29 Cyc. 232. The certificate issued to the deceased contained no condition upon which a forfeiture may be declared, and the conditions relied on by the defendant to establish a forfeiture are set out only in the laws of the order. It was necessary, therefore, in order to establish its defense, that the laws of the society should be introduced in evidence, and to further show that they were in force in this state. As we have seen, none of these laws or regulations were in force in this state, because no copy of such laws were on file with the auditor of state in 1902, when the deceased became a member, and the revised laws of 1904, which were filed with the auditor, were not properly certified. This was fatal to the defense offered. *Knights of the Maccabees of the World v. Nitsch,* 69 Neb. 372.

On the record before us, the judgment appealed from is the only one which the district court was authorized to enter, and we recommend its affirmance.

Epperson and Good, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

Rose, J., concurring.

Payment of the death claim in this case was resisted on the ground that the assured came to his death while en-

gaged in a quarrel in which he was the aggressor. In the certificate itself this was not a condition of forfeiture. The defense rests on a by-law found in a pamphlet in the office of the auditor of public accounts. The pamphlet containing the by-law is not authenticated by the signature of any officer of the society, though the name of an officer is printed with a purported certificate which any printer can duplicate. The statute quoted in the opinion of the commissioner declares 'that such society shall file with the auditor of public accounts a. copy of its constitution, by-laws and amendments, "duly certified to by its secretary or corresponding officer." Within the meaning of this statute the words "duly certified" mean more than a printed certificate and printed name of an officer. The purpose of that term in the law is to require a means of authentication by a responsible officer of the society. This purpose might be defeated by recognizing the printed name of the officer as sufficient. The statute requires a public record which affords the means of identifying the genuine by-laws. When members and beneficiaries are bound by rules which may result in the forfeiture of their insurance, the law protects them by requiring a certificate over the signature of a responsible officer. To hold that printed names may be used in making such certificates for the benefit of the public would take away the safeguard of authentication and weaken official responsibility in disregard of the statute. In the sense used, "duly certified" means attested or identified in writing by the signature of the secretary or corresponding officer. *State v. Brill*, 58 Minn. 152; *Kipp v. Dawson*, 59 Minn. 82; *State v. Schwin*, 65 Wis. 207. In *State v. Gee*, 28 Or. 100, the court said: "To 'certify' means simply 'to testify in writing'; 'to make a declaration in writing.'—Webster. It is not even necessary that the word 'certify' or 'certified' be used in the certificate, but it is sufficient if the required statutory fact be made known in writing under the hand of the officer."

The commissioner in his opinion correctly interprets and applies the statute.