GLEN L. METZGER ET AL., APPELLEES, V. ROYAL NEIGHBORS
OF AMERICA, APPELLANT.

FILED FEBRUARY 10, 1910.    No. 15,852.

1. Insurance: ACTION: EVIDENCE. "A fraternal insurance company
cannot have the benefit of its by-laws and amendments thereto,
in defending against a death claim, unless certified copies of such
by-laws and amendments have been filed with the auditor of pub-
lic accounts." *Hart v. Knights of the Maccabees of the World*, 83
Neb. 423.

2. Witnesses: PRIVILEGED COMMUNICATIONS. In an action prosecuted
by children of a deceased mother upon a certificate of insurance
on her life executed for their benefit, the surviving husband will
not be permitted over their objections to testify to privileged
communications made to him by her during marriage unless the
privilege is waived.

3. Error committed in excluding evidence is cured by the subsequent
admission thereof.

4. Trial: EXCLUSION OF EVIDENCE. Testimony, apparently irrelevant
at the time it is offered, may be lawfully excluded if the party
seeking its admission does not state to the court that evidence
which he expects to introduce will make the proffered testimony
relevant.

5. Appeal: EVIDENCE: OFFER OF PROOF. If objections are sustained to
questions propounded to a witness on his direct examination, an
offer should be made to prove a relevant fact responsive to the
question, or the ruling will not ordinarily be reviewed in this
court.

6. ———: ———. In an action at law submitted to a jury, if a logical
reason exists for rejecting part of a witness' testimony, and with
that part excluded the evidence will sustain the verdict, the judg-
ment will not be disturbed on appeal on the ground that it is not
supported by the evidence.

7. ———: INSTRUCTIONS. If the instructions taken altogether are more
favorable to the losing party than the record warrants, a verdict
will not be set aside because in minor details some of them may
with propriety be criticised.

8. New Trial: NEWLY DISCOVERED EVIDENCE. "Before the defendant is
entitled to a new trial on the ground of newly discovered evi-
dence, it must appear that due diligence was exercised to pro-

cure such evidence upon the original trial, and that it is through no fault or neglect of the party making the application that such evidence was not then produced." *Grand Lodge, A. O. U. W., v. Bartes,* 69 Neb. 636.

APPEAL from the district court for Harlan county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*John D. Dennison, Jr., C. M. Miller* and *Perry & Lambe,* for appellant.

*John Everson* and *J. G. Thompson, contra.*

ROOT, J.

This is an action against a fraternal insurance company upon its certificate payable to the assured's infant children. Plaintiffs prevailed, and defendant appeals. Upon a former submission the appeal was dismissed because of the condition of the record. 85 Neb. 477. The defect has been supplied, and the cause comes on now for decision upon the merits.

1. The defense is that the assured, in violation of the terms of said certificate while pregnant, wilfully and unlawfully caused a physician to commit an abortion upon her person. Certain conditions in the application for insurance, in the certificate and in defendant's by-laws are pleaded to demonstrate that upon the facts defendant is not liable. These allegations are denied in the reply. In 1901, in the application made by the assured for admission into the order, she agreed to conform in all respects to the laws, rules and usages of the society then in force or thereafter adopted. Defendant's by-laws in 1901 contained no conditions for forfeiture other than those set forth in the certificate. By paragraph five of the certificate it is provided, among other things: "If the member holding this certificate * * * shall die by such member's own hands, when sane or insane, or if death shall occur in consequence of a duel, or of any violation or at-

tempted violation of the laws of any state or territory of
the United States, * * * then this certificate shall be
null and void and of no effect and all moneys which have
been paid, and all rights and benefits which may have ac-
crued on account of this certificate, shall be absolutely
forfeited, and this certificate shall become null and void."
Subsequently, in 1903 and 1905, defendant's by-laws were
amended, and, as thus changed, provided that, "if the
death of a member results from criminal or self-inflicted
abortion or · miscarriage, the benefit certificate of such
member shall be absolutely null and void, and all liability
of the society thereon shall by reason thereof be extin-
guished."   Plaintiffs' counsel stipulated that the by-laws
had been amended, and that certified copies thereof "shall
be admitted in evidence without objection except ma-
teriality or relevancy."   The 1901 by-laws and the by-laws
as amended in 1903 and in 1905 were introduced in evi-
dence, but there is no proof that they were filed in the
office of the auditor of public accounts, and hence they
are immaterial for the purposes of this case.   *Hart v.
Knights of the Maccabees of the World*, 83 Neb. 423.   It
was suggested at the bar that the aforesaid stipulation
waived proof of the filing of the amended ,by-laws, but
the argument is not sound.   By stipulating, plaintiffs'
counsel only relieved defendant of the burden of proving
the adoption of the by-laws and amendments thereto.

2. Defendant has not alleged nor attempted to prove
a state of facts essential to bring its defense within the
provisions of section 6 of the criminal code, but by aver-
ment of alleged facts and by direct reference to section
39 of said code the defense is based upon a violation of
section 39, *supra,* which is as follows: "Any physician
or other person who shall wilfully administer to any
pregnant woman any medicine, drug, substance, or thing·
whatever, or shall use any instrument or other means
whatever, with intent thereby to procure the miscarriage
of any such woman, unless the same shall have been neces-
sary to preserve the life of such woman, or shall have

been advised by two physicians to be necessary for that purpose, shall be punished by imprisonment in the county jail not more than one year, or by fine not exceeding five hundred dollars, or by both such fine and imprisonment."

The trial court instructed the jury, in effect, that, if the assured procured an unlawful abortion to be performed upon herself and death resulted therefrom, their verdict should be for defendant. Instruction numbered 4 is as follows: "You are instructed by the court that for the unlawful act of the assured to work a forfeiture it is not necessary that the act should be the direct cause nor the precise consequence which actually followed could have been foreseen. It is enough if the act is unlawful in itself and the consequences flowing from it are such as might have been expected to happen, for in such case the ultimate result is traced back to the original proximate cause. Therefore, if you find that the deceased, Mary A. Metzger, had reason to know that the unlawful act of submitting to an attempted abortion endangered her life, you will find for the defendant. If you find from the evidence that the act of Mary A. Metzger in submitting to an attempted abortion was unlawful, and that death might reasonably have been expected to result therefrom, then the causative connection between the unlawful act and the death is established, and it will be your duty to find in favor of the defendant." The jury were further instructed that, if the assured came to her death as the result of criminal or self-inflicted abortion or miscarriage, or of any violation or attempted violation of the laws of the state or territory of the United States, the certificate in suit would be null and void. Section 39 of the criminal code was set forth at length in the instructions, and the jury informed that, if the assured voluntarily submitted to a criminal operation and death resulted therefrom, they should find for defendant. Finally, they were instructed that, if the assured died as the result of an operation performed by Dr. Conklin in his attempt to relieve her from an ailment from which she was suffering, not the result of any cause

pleaded in defendant's answer, they should find for plaintiffs.

Defendant called the assured's surviving husband, and propounded to him many questions calling for information communicated to him by his wife. Objections to these questions were sustained. Section 332 of the code is as follows: "Neither husband nor wife can be examined in any case as to any communication made by the one to the other while married, nor shall they, after the marriage relation ceases, be permitted to reveal, in testimony, any such communication made while the marriage subsisted." By section 334 of the code the interested spouse may waive said privilege. We think the court committed no error in this regard. The husband's testimony was not for the benefit of his late wife's estate, nor did the witness or plaintiffs waive the statutory privilege. *Stanley v. Montgomery,* 102 Ind. 102.

Defendant complains because the court ruled that the husband need not testify to the fact that he gave Dr. Trostler a promissory note about the time of the alleged abortion. This was not a privileged communication, but the fact was established by the doctor's testimony. We think no error would have been committed in permitting the witness to testify concerning the purpose for which said note was given. Before asking the question, defendant had not connected that purpose with any criminal conduct on the part of Dr. Trostler or of the deceased, nor did its counsel suggest the missing link would be supplied, and, under the circumstances, we think the court acted within its discretion in sustaining these objections. The witness testified to the condition of his wife's health about the time she was in Dr. Trostler's care, and said that he did not know for certain and could not state, except from statements made by her, the purpose of the physician's visit, nor inform the jury what the doctor did to his wife. So, whether the court ruled wisely or otherwise concerning many questions propounded to the hus-

8

band, defendant's counsel finally secured from the witness statements which, if true, indicated that he could not assist the defense without divulging privileged communications made to him by his wife, and that privilege was insisted upon. The woman's pregnancy is established by the testimony of at least one other witness, and is not contradicted.

3. Dr. Conklin succeeded Dr. Trostler. as the assured's physician, and testified for the defendant to the effect that before treating his patient he required Mr. and Mrs. Metzger to sign a written statement wherein they exonerated him from all blame because of results flowing from an attempted abortion committed by Dr. Trostler. This document the witness stated was lost, but he produced an alleged copy, which was excluded by the court. The witness, however, testified to the contents of the original paper, so the fact was before the jury.

4. Since defendant's counsel did not offer to prove any fact after objections to certain questions on direct examination of its witnesses were sustained, we will not review errors assigned upon such rulings. Witnesses were allowed to answer relevant questions which had been held improper at other stages of the trial, and in some instances were refused permission to testify a second time concerning subjects discussed in answers theretofore given by them, so that apparent errors argued upon an examination of the entire bill of exceptions are found not to be real. An attempt was made to prove that Mr. Gomer Thomas while county attorney of Harlan county had control of a written dying declaration made by Mrs. Metzger, but the record discloses the witness was not acquainted with the handwriting or the signature of the assured, nor was there any competent foundation laid to establish that said document contained the statements referred to.

5. It is insisted that the verdict is not sustained by the evidence. It will be borne in mind that, in the state of the record, it devolved upon defendant to prove that the assured came to her death as a result of a violation or

attempted violation of the law, and that it pleaded the assured came to her death as a result of a violation of section 39 of the criminal code. It appears from the evidence: That on the 23d day of September, 1906, Mrs. Metzger consulted Dr. Trostler, and was probably treated by him until about the 9th of October. The evidence is meager concerning her physical condition, but it may fairly be inferred she was in ill health and probably pregnant. From October 9 until November 13 the woman was not, so far as the evidence indicates, under the care of or treated by a physician, but on the last named date Dr. Conklin was employed to attend the woman, and called to his assistance Dr. Gardner. An examination disclosed an inflamed condition of her generative organs, and an unsuccessful attempt was made to relieve the patient by the use of various remedies and instruments and by an operation. Dr. Bartlett was then called in consultation, and on the 18th Dr. Elam, an expert in gynecological surgery, with the assistance of Drs. Conklin and Bartlett, attempted to operate upon the woman, but she died before the preliminary incision was completed. Dr. Conklin testifies that Mrs. Metzger told him that Dr. Trostler had attempted an abortion upon her, and there is evidence to corroborate his statement that by some means an abortion had been attempted prior to his connection with the case. It is not impossible to logically infer from Dr. Bartlett's testimony that the woman died as a result of Dr. Conklin's operation. The jurors may have rejected Dr. Conklin's testimony concerning the woman's declarations, and, if they did so, the verdict is not without some support in the evidence. It is possible that the woman's condition prior to November 13 was brought about by some unforseen and innocent cause. On the other hand, she may have attempted upon her own responsibility to operate upon herself. It may be doubted whether an abortion brought about or attempted by the woman would amount to a violation of section 39 of the criminal code. *Hatfield v. Gano*, 15 Ia. 177; *Commonwealth v. Wood*, 11 Gray

(Mass.) 85; Bishop, Statutory Crimes (3d ed.) secs. 749, 760. In any event, the burden was on defendant to establish to the satisfaction of the jury the facts upon which it predicated a forfeiture of the certificate in suit, and we do not feel justified in disturbing the verdict upon this point. The instructions are criticised, but, taken altogether, they are much more favorable to defendant than the evidence justified, and it has no just cause for complaint upon this point.

6. Defendant's showing of diligence was not sufficient to justify the court granting a new trial because of newly discovered evidence. This subject is largely within the discretion of the trial court, and ordinarily its ruling upon the point is conclusive. *Grand Lodge, A. O. U. W., v. Bartes,* 69 Neb. 636.

The judgment of the district court therefore is

AFFIRMED.